## STATE OF IOWA V. L. D. MAHONEY, Appellant.

**Burglary:** ATTEMPT TO BREAK AND ENTER: ACCOMPLICE: EVIDENCE.
1    In a prosecution for an attempt to break and enter a building, defendant may be convicted as an accomplice or for aiding and abetting another in breaking and entering.    Evidence considered and held sufficient to warrant a conviction.

**Allegations:** PROOF. VARIANCE. On a prosecution for an attempt
2    to break and enter a building, proof of the completed offense is not a variance, but establishes the offense charged.

**Instruction:** ATTEMPT TO BREAK AND ENTER. On a prosecution for
3    an attempt to break and enter, where the evidence shows that defendant aided and abetted the one who committed the offense, an instruction using the language, "concerned in the commission of the offense and co-operating with the person committing it in its commission", without explanation of such language, was not error, in the absence of a request for an explanatory instruction.

**Instructions:** REASONABLE DOUBT. In the absence of a request,
4    omission to give an instruction defining a "reasonable doubt," is not error.

**Instructions:** REASONABLE DOUBT "WELL FOUNDED." The phrase
5    "well founded" as used in an instruction concerning reasonable doubt, while uncertain in meaning, yet taking the instruction as a whole, is held not to constitute prejudicial error.

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

FRIDAY, JANUARY 15, 1904.

INDICTMENT for an attempt to break and enter a building. Trial to a jury. Verdict and judgment of guilty, and defendant appeals.—*Affirmed.*

*Stewart & Moen* for appellant.

*Chas. W. Mullan,* Attorney General, *Lawrence De Graff,* Assistant Attorney General, and *Jesse A. Miller,* County Attorney, for the State.

DEEMER, C. J.—At about ten o'clock in the evening of December 20, 1902, the night watchman of the Shannon Mott Flour Mills, in the city of Des Moines, discovered a light in a small building used by the company for an office. This light disappeared, then reappeared, only to be extinguished and again appear. Surmising that something was wrong, the watchman crawled along the south side of the building to its front on Fifteenth street, and when near the southeast corner of the building discovered the defendant standing in a recess or alcove in the building where he would practically be out of sight, looking up Fifteenth northward toward its junction with Walnut street. A policeman had a few minutes before passed up this street, and disappeared at Walnut. The watchman immediately placed defendant under arrest, defendant asking him at the time to wait a minute, saying that he wished to watch there a few minutes for a train. There was no railway depot near the office, but the main line of the Chicago, Milwaukee & St. Paul Railroad ran within sixty feet of the building, and some of the tracks in its yard were within twenty or thirty feet of the office. The night was dark and foggy, and the roads were muddy

Shortly after defendant's arrest some one, who had apparently been in the building, was heard to jump out of the west window thereof, and start to run away. The night watchman saw him, and, pushing the defendant ahead for protection, began firing at the fleeing man, holding the revolver so close to defendant that defendant says the powder burned his ear. None of the shots took effect, but the watchman, on account of the presence of the defendant, was obliged to forego any further attempt to intercept the fleeing man. Defendant was taken to a drug store, and there held until he could be turned over to the police force; which was done as soon as they could be notified of the arrest. After the defendant had been safely lodged in jail the watchman returned to the office, and there found certain officials of the Shannon Mott Company, who it appears had in the meantime been notified of the arrest. An investigation was immediately made of the building, and it was discovered that some one had been in the building, had lighted several matches therein, and had been around the iron safe which stood in the office. Attempt was made to follow the man at whom the watchman discharged his revolver, but without success.

Defendant was indicted for an attempt at breaking and entering the building, and of course might be convicted if the evidence showed that he was an accomplice 1. ATTEMPT to in the crime or aided and abetted some perbreak and son in breaking and entering the building. enter: accomplice: evidence. On the trial defendant accounted for his presence at the office, and at the place where he was found, by saying he was there to catch a freight train on the railway which passed near the building, in order that he might steal a ride to Boone. He accounted for his position by saying that he was there to protect himself from the inclemency of the weather. But in giving his account he said that he had come down from Ames on the Chicago & Northwestern Railway at three or four o'clock

in the afternoon to go to Boone, which, as is well known, is on the Chicago & Northwestern Railway, as also is Ames.   As Boone is about as far from Des Moines as from Ames, defendant's story that he came to Des Moines from Ames to get to Boone is, to say the least of it, highly improbable.

When arrested defendant was in a position so that he could see what was going on in the office, and he was evidently watching the policeman who had passed by the building but a few minutes before, and after his arrest he did that which one accused of such a crime would naturally do; that is to say, he tried to get the watchman to wait a minute, in order that the man in the building might escape.

Of course, his mere presence at the office would not be sufficient in itself to justify his conviction as an accessory to the crime, but this, with other circumstances, taken in connection with the fact that he made various contradictory statements regarding his seeing the other man, who fled at about the time of his arrest, and his unreasonable account of how he happened to be in Des Moines and at the particular place, was sufficient to justify the court and jury in believing that he was guilty of the offense charged.

II.   The third instruction given by the court is challenged on several grounds.   It reads as follows:   "You have observed that the charge is that defendant attempted to break and enter said building with intent to commit a larceny.   If another man than the defendant feloniously broke and entered said building, with intent to commit a larceny, he must have first attempted to do so before consummating the breaking and entering, and if the defendant was concerned in the commission of that offense, and co-operating with the person committing it in its commission, then he is chargeable with the attempt made by such a person the same as if he had made the attempt himself.

If such a breaking and entering was·with intent to commit a larceny, and the defendant was concerned in the commission of the breaking and entering with that intent, he is chargeable with such an intent. If you find beyond a reasonable, well-founded doubt, upon all the evidence, that the defendant did thus attempt to break and enter said building, and the said attempt to break and enter was with intent to commit a larceny, then you will find him guilty, but if, upon a view of the whole evidence, you have a reasonable doubt of his guilt as charged, you will acquit him." The defendant asked no instructions, but he says this one is erroneous, first, because he was charged with an attempt to break and enter, and there is a fatal variance between the allegations and the proofs; second, because of the use of the words "being concerned in" and "co-operating with" without definition or explanation; third, because there was no evidence that defendant was an accomplice; fourth, because the court did not define reasonable doubt; and, fifth, because of the use of the words "well-founded" in the latter part of the instruction. Of these in their order. It will be observed that the court virtually covered the entire case, aside from the mere formal matters in this one instruction. ·There is no objection to this, if the instruction is in fact correct as applied to the facts, and is not misleading or too much involved.

There was no variance between the allegations and the proof. In a sense the commission of an offense involves an attempt to commit it. It may not be a degree 2. ALLEGATIONS: of the main offense, nor be necessarily inproof: var-iance. cluded therein, so as to require the court to charge with reference thereto in every case where the commission of an offense is charged. But, as the greater includes the less, it is manifest that in every case where an attempt is charged proof of the actual commission of the offense establishes the attempt. If the offender actually commits the offense, he necessarily attempted to do

it, and proof of the commission of the actual offense does not constitute a variance. We have held that a conviction of petit larceny before a justice of the peace is a bar to a subsequent prosecution for larceny from the person based on the same transaction. The only reason for such a holding was that the one is so involved in the other that an acquittal for one is a bar to the other. Other illustrations might be given, but this will suffice.

The evidence was sufficient to show that the defendant aided and abetted, was concerned in, and co-operated with the person who in fact broke and entered the building. While an instruction defining these terms might well have been given, yet as applied to the facts, and in view of defendant's failure to make any requests, we think there was no prejudicial error in using the words "concerned in the commission of the offense and co-operating with the person committing it in its commission," without further explanation. These words are familiar to every one of sufficient intelligence to sit upon a jury. They are plain and unambiguous, and, in the absence of a request for more specific instructions, are sufficient.

3. INSTRUCTIONS attempt to break and enter.

The same may be said with reference to the words "reasonable doubt." An attempt at explanation of this term is generally confusing, and we are quite ready to agree with those courts which hold that an attempt at elucidation is apt to lead to misleading refinements. From this it is not to be understood that we think it improper to give the usual stereotyped instruction with reference to reasonable doubt. Familiar with the practice generally prevailing in this state, and cognizant of the fact that it is usual to give an instruction with reference to reasonable doubt, we do not, of course, mean to condemn such practice. What we do hold in this case is that, in the absence of request, it is not error to omit an explanatory instruction defining "reasonable doubt."

4. INSTRUCTIONS reasonable doubt.

The last point made is that the court erred in saying that a reasonable doubt must be "well-founded." The expression is certainly a loose one, and not to be commended. The term "well-founded" has a double significance. It may mean founded on good reasons, or it may be defined as not baseless or having no support. In the latter sense the instruction is not erroneous, for it is well settled that a doubt, to be reasonable, must have some basis either in the evidence or from a lack of evidence on some material proposition. In other words, it is not a barely possible one, nor one sought after, not a capricious nor an imaginary one, nor one based upon a surmise or groundless conjecture. It must be a rational or substantial one, having some basis in reason, although it need not be such an one as the jurors may be able to give a reason for. In what sense was the jury in this case justified in believing the words "well-founded" were used? Taking the paragraph of the instruction as a whole, and construing it in the light of all the language used, there is no doubt, we think, that they understood the words used as not baseless or founded on mere speculation, but real and substantial. In the latter part of the instruction the jury is told, that if it had a reasonable doubt of the defendant's guilt, it should acquit. Taking the instruction as a whole, there was no error of which defendant may justly complain, and the judgment is therefore AFFIRMED.

5. INSTRUCTIONS reasonable doubt "well founded."