THE STATE OF IOWA, Appellee, v. MRS. HERB. STEEN, Appellant.

**Disorderly house:** EXAMINATION OF WITNESSES: EXPLANATION BY 1 COURT. Where a witness evidently does not understand the purport of an inquiry, it is proper for the court, even though there is no objection to the question, to instruct the witness concerning the nature of the information called for.

**Evidence:** NONPREJUDICIAL. On a prosecution for keeping a house 2 of ill fame, where the testimony of a witness is not necessarily derogatory of the place, and to give it a damaging significance

it would be necessary for the jury to extract a meaning neither apparent nor fairly inferable, it will not be held prejudicial.

**House of ill fame:** SUFFICIENCY OF PROOF. In a prosecution for keeping a house of ill fame, it is not necessary to show acts of sexual intercourse, but a conviction may be based on proof of facts and circumstances from which the inference of guilt is so strong as to exclude reasonable doubt.

**Instructions:** REASONABLE DOUBT: INADVERTENT USE OF "HIS" FOR "HER." On a separate prosecution of the wife for keeping a house of ill fame, where the husband and wife were jointly indicted, competent evidence of the husband's conduct respecting the place appeared in the record, and the court in an instruction respecting reasonable doubt, inadvertently used the word "his" in place of the proper word "her." Held to have been without prejudice.

**Evidence:** GENERAL REPUTATION. Proof of the general reputation of women frequenting a place of alleged ill repute, is evidence that the keeper of the house had notice of their character and the nature of the business they were engaged in.

**Argument:** MISCONDUCT. Under the record, misconduct of the prosecuting attorney in his closing argument to the jury, is not established.

*Appeal from Mahaska District Court.*— HON. JOHN T. SCOTT, Judge.

SATURDAY, OCTOBER 22, 1904.

INDICTMENT for keeping a house of ill fame. The defendant was convicted and appeals.— *Affirmed.*

*Davis & Orvis,* for appellant.

*C. W. Mullan, Attorney General, L. De Graff, Assistant Attorney General,* and *Jas. A. Devitt, County Attorney,* for the State.

WEAVER, J.— I. The first proposition advanced by counsel for appellant is that the verdict of guilty is not warranted by the evidence. A reading of the record brings us to a different conclusion. We shall not rehearse the testi-

mony.  It is sufficient to say that, if believed by the jury, the case made by the witnesses for the State affords abundant ground for the appellant's conviction.  The credibility of the witnesses on either side was a matter for the jury alone to pass upon, and we find nothing to indicate that in so doing they were influenced by passion or prejudice.

᛫II.  A witness — Cora Sinclair — testifying in defendant's behalf was asked if she knew the general reputation of the defendant's house at the time in question " as to
1. EXAMINATION   whether it was a house of ill fame or not."
OF WITNESSES:    She replied with the inquiry, " Do I know
explanation
by court.        whether it was what you say ? " and defendant's counsel responded, " Just answer whether it was."  At this point the court interrupted, saying to the witness, " The question does not call for your knowledge as to what the place really was, but as to what people say about it; it simply calls for the reputation."  To this remark the defendant took exception, and urges it upon our attention as prejudicial error.·  The objection is not well founded.  The witness was evidently uncertain whether counsel was asking in regard to the reputation of the place or for her knowledge of its actual character, and it was entirely proper for the court, even though the question was not objected to by the other party, to instruct the witness concerning the nature of the information asked for.  We assume that counsel did not desire their witness to swear to the ultimate fact which the jury were to determine, and we cannot conceive how the appellant could have been prejudiced by a pertinent and correct direction to the witness ᛫as to her duty in the· premises.

The ᛫witness, having testified that she had not heard the house spoken of as a house of prostitution, was asked by the prosecuting attorney on cross-examination ᛫if· she " ever
2. EVIDENCE:     heard any talk of any kind about the place,"
non-preju-
dicial.  ᛫      and over the objection of appellant she answered, " Yes, sir."  We can readily see that this question

·might have been answered in a manner to prejudice the appellant, and think it would have been better had the objection been sustained. But the question did not necessarily call for any report or talk derogatory to the good name or fame of the house, or of its owners or occupants; and certainly, the answer disclosed nothing of that kind. To give it a damaging significance, we should have to extract from the language a meaning which is neither apparent nor fairly inferable.

III. But one witness testified to personal knowledge of an act of prostitution in defendant's house, and it is said that this is not sufficient to sustain a conviction. That a single act of prostitution, of itself, is insufficient to support a verdict of guilty, may be conceded for the purposes of the argument;

3. HOUSE OF ILL FAME: sufficiency of proof.

but certainly it cannot be the law that to successfully prosecute an indictment for keeping a house of ill fame the State must produce witnesses who have personally seen or participated in acts of sexual debauchery on the premises. Like other crimes of darkness and secrecy, it can, as a rule, be established only by proof of facts and circumstances from which the inference of guilt is so strong as to exclude reasonable doubt. State v. Schaffer, 74 Iowa, 704. In cases of this nature also, the statute permits a species of evidence not usually admissible in criminal cases — evidence of the general reputation of the house; and such reputation is a circumstance of importance which may justify the jury in convicting a defendant in a case which is otherwise doubtful. Other objections are made to rulings upon the admission of testimony. They are so numerous that to attempt a detailed examination of them would unduly extend this opinion, and we have to say that, after examining each of such rulings, we find no prejudicial error.

IV. Complaint is also made that the court during the course of the trial indulged in remarks having a tendency to influence the jury against the defendant. Many of the

remarks to which exceptions are taken were entirely legiti-
mate suggestions and directions concerning the business be-
fore the court, while others were perhaps not strictly called
for; but none, so far as we are able to observe, was of a
kind or character calculated to impress the jury with the
private opinion or inclination of the judge upon the ques-
tion of the defendant's guilt or innocence.

V.   The defendant was jointly indicted with her hus-
band, but was granted a separate trial.   It was inevitable,
and to a certain extent proper, that more or less evidence
should go to the jury as to the conduct of the
husband in respect to the house and the charac-
ter of its occupancy.   In one of the court's
instructions to the jury upon the question of reasonable doubt
this language is used: " If, therefore, after a careful con-
sideration of all the testimony in the case, you find the mind
hesitating and wavering between the proposition as to the
guilt of the defendant or *his* innocence, then you should
acquit.   If, however, on the other hand, no such doubt
arises, but, on the contrary, your minds and consciences are
so far convinced and satisfied that you would act thereon
yourselves, if applied to more important affairs of life, then
you will be justified in convicting the defendant."   It will
be observed that in the first clause quoted the possessive
" his " is used instead of the appropriate word " her."
Counsel profess to find serious error in this mistaken choice
of a word, and say that the effect of the instrument was to
tell the jury that, " if they find the mind wavering as to his
(the husband's) innocence, then they must convict Mrs.
Herb. Steen."   Stating their objection from another angle
of observation, they further suggest that, as no evidence
was offered to exculpate the husband from complicity in the
offense charged, the jury, being unlearned in the law, might
well have understood the court to mean that, " if the evi-
dence showed that he (the husband) was not innocent, but
that he was guilty, then they must find that the defendant

4. INSTRUCTIONS: inadvertent use of "his" for "her."

Mrs. Herb. Steen was guilty as charged in the indictment."
This criticism involves such a manifest distortion of the evi-
dent meaning and effect of the instruction criticised that
we think it must be attributed to the impassioned zeal of
the advocate, rather than to. the fair-minded consideration
which characterizes the learned counsel in their calmer mo-
ments. The use of "his" instead of "her" in framing
the instruction is such an evident slip of the pen that no
juror of average mental capacity could possibly be mis-
led by it. It is perfectly safe to assume that jurors know
something, and that the jury in this instant knew that they
were trying the appellant, and not her husband, and that
she was to be convicted, if at all, upon proof of her personal
complicity in the offense charged. There is nothing what-
ever in the court's charge to indicate or suggest that this
woman, though not shown to be guilty in fact, could yet be
convicted as a vicarious offering for the sins of her husband.
The court elsewhere told the jury very clearly that, in order
to convict the appellant, the State must show not merely
that she had control of a house which was kept as a place
of resort for prostitution, but that she was the keeper of the
house, was concerned in and consented to such unlawful
uses — a statement, which, to say the least, was as favorable
as the defense could rightfully demand.

It is still further objected that the court erred in charg-
ing the jury, in substance, that if women generally known
and reputed to be prostitutes were kept or harbored by plain-
5. EVIDENCE:        tiff in her house, where they carried on their
general repu-
tation.        immoral practices, she might be found to have
notice or knowledge of such reputation and character and
of the unlawful purposes for which such women and their
visitors resorted to her premises. This is but saying that
proof of the general repute of the woman is evidence tending
to show that the accused had notice of their real character
and of the nature of the business they were engaged in.
This, we think, is a correct proposition of law. *Graeter v.*

*State,* 105 Ind. 271 (4 N. E. Rep. 461) ; *State v. Wells,* 46 Iowa, 662 ; *People v. Wallach,* 60 Hun, 584 (15 N. Y. Supp. 226) ; *Johnson v. State,* 32 Tex. Cr. R. 504 (24 S. W. Rep. 411) ; *Forbes v. State,* 35 Tex. Cr. R. 29 (29 S. W. Rep. 784) ; *Harwood v. People,* 16 Abb. Prac. 430.

Other exceptions to instructions given, and to the court's refusal to give instructions asked, are assigned by counsel, but in our opinion, none of them are well founded.

VI. ᐧ Finally, it is alleged that the prosecuting attorney was guilty of misconduct in his closing argument to the jury. If it were sufficiently shown or admitted that the prosecutor 6. ARGUMENT: did in fact make use of the language attributed misconduct. to him, it would expose him to just censure, though possibly the circumstances were such as not to justify a reversal on that ground alone. But the trial court, which ought to have known the truth, refused to certify to appellant's version of the argument, and struck the same from the general bill of exceptions presented by the appellant for his signature. Thereafter, and after the general bill of exceptions as thus corrected had been signed and filed, appellant's counsel procured the affidavits of two persons who claimed to have been present and heard the arguments to the jury to the effect that counsel's version of the prosecutor's statements in argument is correct, and this verified statement has been filed in the case, and is embodied in appellant's abstract as a " bystander's bill of exceptions." Upon the filing of the bystander's bill, the State controverted the same by the affidavits of other persons who are alleged to have been present at the trial. In this condition of the record we are disposed to hold that the alleged misconduct of counsel has not been established. The complaint of the appellant was, as we have already seen, brought to the attention of the trial court, which refused to sustain it, and struck the matter from the proposed bill before signing it. The presumption is in favor of the court's finding, and, if we assume that such presumption could be overcome by an

uncontradicted bill of exceptions by bystanders, such cannot be the effect of a bill of that nature when controverted by other affidavits of equal apparent value.

We find nothing in the record to call for a reversal, and the judgment of the district court is *affirmed*.