STATE OF IOWA, Appellee, v. ROSE BURLEY, Appellant.

CRIMINAL LAW: Appeal and Error—Assignment of Error—Failure to Argue—Effect. Errors specified and points made in rule manner may not be considered as abandoned because the same are not elaborated by argument *in extenso*.

INDICTMENT AND INFORMATION: Requisites and Sufficiency—Improper Designation of Offense. It is quite immaterial what *name* is given in the indictment to the offense charged. The *facts* alleged are the all-important consideration.

PROSTITUTION, HOUSE OF: Evidence—Possession and Use of Intoxicating Liquors. The possession and use of intoxicating liquors is a recognized badge of a house of ill fame, and evidence of such possession and use is material and relevant on a charge of keeping such house.

CRIMINAL LAW: Trial—Reception of Evidence—Incompetent Evidence—Promise to Show Competency. Testimony incompetent in itself may properly be received under a promise to subsequently show its competency, especially when the jury is specifically and repeatedly told that the testimony in question is of no weight unless the defendant is shown to be responsible therefor.

CRIMINAL LAW: Appeal and Error—Trial—Evidence— Motion to Strike—Waiver. One who consents that the court may reserve a ruling may not predicate error on the failure to subsequently rule, without a request therefor and proper entry of exceptions, in case of a refusal.

APPEAL AND ERROR: Briefs—Preparation—Assignment of Er-
6 rors Without Brief Point—Effect. An assignment of error
which forces the court to an examination of the abstract in or-
der to determine its exact nature, with no separately stated
brief point, raises no question upon which the court is bound
to pass.

CRIMINAL LAW: Appeal and Error—Briefs—Preparation—Waiv-
7 ing Defects. Manifest guilt, in criminal causes, is ample reason
for demanding a strict compliance with the rules governing the
preparation of briefs and arguments.

APPEAL AND ERROR: Harmless Error—Improper Exclusion on
8 Cross-Examination. Unduly limiting cross-examination as to
matters bearing on the interest and credibility of the witness is
harmless when it affirmatively appears that, had the desired tes-
timony been received, the verdict would not and should not
have been different than it was.

CRIMINAL LAW: Appeal and Error—Assignment of Errors—Con-
9 tradictory Assignments. One who asserts that a certain ques-
tion was one of *law* and not of *fact* may not predicate error on
the failure of the court to submit it as a question of fact, even
though his brief point so asserts.

TRIAL: Instructions—Form, Requisites · and Sufficiency—Lack of
10 Clearness—Waiver. The explicitness of instructions may not
be questioned by one who asked no instructions and entered no
exceptions to those given.

NEW TRIAL: Proceedings to Procure—Misconduct of Jurors—Un-
11 verified Motions—Criminal Law. Allegations, in a motion for
new trial, of misconduct on the part of jurors, are without ef-
fect unless verified or otherwise supported by proof.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY,
Judge.

NOVEMBER 26, 1917.

HERE there was a conviction on an indictment charging
the crime of keeping a house of prostitution, and defendant
appeals.—*Affirmed.*

*F. T. Van Liew,* for appellant.

*H. M. Havner,* Attorney General, *F. C. Davidson,* As-

sistant Attorney General, and *Ward C. Henry*, County At-
torney, for appellee.

SALINGER, J.—I.   It is not, as the State

1. CRIMINAL
LAW: appeal
and error:
assignment of
error: failure
to argue: ef-
fect.

seems to contend, an abandonment of errors
specified and points made in rule manner
because these were not elaborated by the
argument *in extenso*.   Such argument is de-
sirable, but optional.

II.   The indictment charges that defend-

2. INDICTMENT
AND INFORMA-
TION: requi-
sites and suffi-
ciency: im-
proper desig-
nation of of-
fense.

ant is guilty "of the crime of keeping a house
of prostitution," committed as follows: That
defendant, on or about the 1st day of De-
cember, 1916, in said county and state, and
on divers other times between the said 1st

day of December, 1916, and the time of finding the indict-
ment, "did wilfully, unlawfully and feloniously keep and
maintain a house resorted to by divers persons   *   *   *
for the purpose of prostitution and lewdness, and in which
house acts of prostitution and lewdness were committed." It
is urged the court erred in overruling the defendant's motion
for new trial, because this indictment charged the "keeping
of a house of prostitution," and that the statute provides
no punishment for doing that.   The vital thing in an indict-
ment is that it have "a statement of the facts constituting
the offense in ordinary and concise language, without repeti-
tion, and in such manner as to enable a person of common
understanding to know what is intended."   Code Section
5280.   Giving the wrong name to the offense is not material.
The facts stated determine for what defendant is to be tried.
*State v. Davis*, 41 Iowa 311; *State v. Wyatt*, 76 Iowa 328;
*State v. Smith*, 148 Iowa 640; *State v. McIntire*, 59 Iowa
264.   If the offense charged has no name given to it by
statute, the giving it a name in the indictment which is
repugnant to the facts alleged as constituting the offense.

will be regarded as surplusage. *State v. Shaw,* 35 Iowa 575. The contention is without merit.

III. As to the claim that there is no evidence that defendant committed any crime in Polk County within the statute of limitations. It is not well made, whether construed to mean that venue was not proved or that there is a failure to show that acts done where the venue is laid were done so recently as not to be within the bar of the statute. We shall not elaborate, beyond saying that the abstract of appellee shows there was direct testimony that, if anything prohibited occurred, it was in Polk County, Iowa, and an abundance of testimony from which the jury could find that the time of doing did not invoke the statute.

IV. A witness was asked what the fact

**3. PROSTITUTION, HOUSE OF: evidence: possession and use of intoxicating liquors.** was as to whether or not defendant would, when men came up there, serve intoxicating liquors to them. Upon objection that this was incompetent, immaterial, and had no bearing upon the offense charged, the trial judge said: "That is merely an incident to what was going on, and she is not on trial for that, of course. Answer." An exception was saved. The answer was: "There was drinks there. Defendant would go away and get it; she would not always serve it; others did. It was served in glasses that belonged to her." In argument, defendant says that evidence of other crimes, such as the handling of intoxicating liquors, is not competent under the indictment herein. That is so, broadly stated; and, as seen, the trial court so declared before the jury. He did not elaborate upon it by limiting the effect of such testimony in the charge, and he was not asked to, and the charge was not excepted to.

The question, then, is whether testimony that one charged with maintaining a house of ill fame supplied the patrons with intoxicating liquor is receivable for *no* purpose. On that question, *State v. Shaw,* 125 Iowa 422, cited by the

State, gives us no light; and *State v. Steen,* 125 Iowa 307, and *State v. Burns,* 145 Iowa 588, have no bearing on any question on this appeal. But if it had never been decided, it would yet be true that, upon this charge or any other, all things are receivable if they tend to establish or refute the accusation on trial; and this though what is received tends to show what in itself constitutes a crime. The test is not what act is being offered, but whether the offer is material and relevant. Suppose it were a crime to threaten the life of prosecutor. If defendant, tried for shooting prosecutor, asserted that he was friendly to prosecutor, as an argument that it was unlikely he had shot at him, would it be claimed that the threat was inadmissible because defendant was not on trial for the crime involved in such threat? In *State v. Gardner,* 174 Iowa 748, we held that, on such accusation as this, all the circumstances developed in the evidence, such as the going and coming of people to the house, were to be considered. This was not an excluding specification, but an illustration. In *State v. Gill,* 150 Iowa 210, at 213, we deal with the sufficiency of the evidence to sustain the verdict. We set out as one item that one witness thought, from the appearance of men going to and from the house, through both back and front doors, that most of them had been drinking, and another testified that one of them was drunk on leaving, and hold that this, with many other things set out, sustained the verdict. If, then, we are to sustain appellant, we must hold that, in spite of these indications in our decisions, it is, as matter of law, immaterial and irrelevant to show, in proof of a charge of maintaining a house of ill fame, that the owner furnished liquor to visitors. So to hold is to throw away common knowledge that liquor getting and drinking is a badge of the bawdy-house. We are not minded to do this.

**4. CRIMINAL LAW: trial: reception of evidence: incompetent evidence: promise to show competency.**

V. The court, despite objection that it was not material and not binding on defendant, received the following testimony by an alleged inmate:

She was accosted that morning on the public highway. "They didn't say anything about testifying in this case; they called me a snitcher; they said they would get me if I came over here,—they would keep me from coming. This was just one man; he grabbed me by the shoulder. I never saw this man up to Rose Burley's house that I know of. I saw him in the middle of Mulberry, between Sixth and Seventh, this morning; saw him down on Walnut some place,—don't know just where it was,—couldn't say for sure. He said nothing to me at that time. Don't remember of ever seeing him before. Q. Now what is the fact, Miss Page, as to whether or not any threats have been made against you if you came to this court to testify in this case? A. Why, there was never any threats, —only once it was said that, if I testified, I should go the same as if they convicted her; that they would convict me the same."

Through all of this, the court stated repeatedly that it was of no weight unless it should be made to appear that defendant was responsible for what was said and done. At the close of the testimony of the witness, defendant moved to strike all the evidence relating to an alleged attack on the day of the trial, on the grounds that it is incompetent, irrelevant and immaterial, and has no bearing upon the issue in this case, and is not involved or connected with defendant in any way. Counsel for the State answered that this testimony shows "they" told her they were going to get her if she came over here to testify today. Counsel for defense answered that it was not binding on defendant. And the court said:

"I will hold that motion in reserve. I don't know what

'the further proof may be, but we will see what may happen in the future. It will have to be brought home to the knowledge of the defendant."

Defendant consented that the ruling might be reserved.

5. CRIMINAL LAW: appeal and error: trial: evidence: motion to strike: waiver.

Now, it was not error to receive this testimony. The State could not prove all of any branch of its case by any one question and answer. It was bound to make this connection if it was to retain what it had put in, but the court had the power to say what the mere order should be. It did no more than exercise that power by ruling that the State might show first what was done, and later, that defendant was responsible. It made clear to all that the first should not count unless the last was proved. If error there was, it does not lie in receiving, but in failing to exclude in terms by making the ruling which was reserved. The reservation having been upon consent, there is no reversible error in failing to rule finally, because such final ruling was not asked, nor failure to make it excepted to.

6. APPEAL AND ERROR: briefs: preparation: assignment of errors without brief point: effect.

VI. The witness Page was asked, on cross-examination, "Now, you have been promised immunity and protection if you would testify in this case?" She was not permitted to answer, on the objection of the State that this is "incompetent, irrelevant and immaterial to any issue in the case, not proper cross-examination—she is not on trial here," and though counsel for defendant stated, what was quite manifest, that the purpose was to show the interest and bias of the witness. We think we should not pass upon the ruling. Its sole presentation is by a statement in the "Errors relied on for reversal" that the court erred in sustaining the objection of the State to the question of the defendant "at page 12, line 20, of the abstract, for the reason that the question was material to

show the interest of the witness, and to test her credibility."
The rule provides that the "Errors relied upon for reversal"
shall be followed, "under a separate heading of each error
relied on," by "separately numbered propositions or points,
stated concisely and without argument or elaboration,
*  *  *  No alleged error or point not contained *in this
statement of points* shall be [deemed] raised," etc.   The
presentation here is faulty: First, because what the com-
plaint is can be told only by going to the abstract; second,
the point is not made in appellant's statement of points. We
affirmed for violation of the rule in *Campbell v. Davis,* 180
Iowa 314. We have the power to waive the rule, but are not
obliged to use it. Those who fail to observe it take their
chances.   While we have waived it in aid of liberty
(*State v. Walters,* 178 Iowa 1108), this case
does not move us to do so.   The proof of
guilt is so clear that waiver would be in aid
of crime rather than of protecting against
the chance of an undue deprivation of liberty.

7. CRIMINAL LAW: appeal and error: briefs: preparation: waiving defects.

VII.   The witness Risden, who claims
to have gone to the place of the defendant un-
der his employment as state agent, and to do
detective work, on cross-examination said
that he gathered his evidence on the 20th of

8. APPEAL AND ERROR: harmless error: improper exclusion on cross-examination.

December. He was then asked whether this was not just
four days before his principal, the attorney general, went
out of office; whether this evidence was not gathered for the
purpose of reappointment—of witness' being continued in
his office; whether this was not the first case of the kind
he had ever brought in the city of Des Moines.   To all of
these, objections were sustained, in effect, that same was in-
competent, irrelevant, immaterial, and improper cross-ex-
amination. It is now urged there was error in this, "for
the reason that he was an employed decoy, and defendant
was entitled to a wide latitude in cross-examination to test

the credibility of the witness, and of his interest." We in-
cline to think the witness should have been permitted to an-
swer. But we cannot reverse for this exclusion, because we
are abidingly satisfied that, if it had been answered that this
evidence was gathered four days before the attorney general
went out of office, and as an aid to reappointment, and that
this was the first case of the kind ever instituted by the
witness in Des Moines, yet, upon the whole record, the ver-
dict would not and should not have been other than it was.
In other words, it appears affirmatively that the error was
without prejudice.

VIII. It is said the court erred in sustaining objec-
tions of the State to the cross-examination of Risden, "for
the reason that said Risden was an employed decoy, and
the defendant was entitled to a wide latitude in his cross-
examination to test his credibility and show his interest." ·

At the close of the testimony of the witness Page, de-
fendant moved to strike all her testimony, because "it ap-
pears she is being offered as an accomplice, and there is no
corroboration of any of her testimony." This was over-
ruled, and it is said in the points relied on for reversal that
this was error. It is said in the errors relied upon for
reversal that the court erred in failing to instruct the jury
that the testimony of Page, "a self-confessed accomplice,"
should be corroborated, and if not so corroborated, it should
be not considered.

In the brief points it is said that the testimony of decoys
should be corroborated, and the court should instruct there-
on, and that the testimony of Page and of Streeter and
Risden, who are decoys employed by the State, is not cor-
roborated; that the court erred in failing to instruct the
jury that the testimony of Risden and Streeter should be
corroborated or else ignored, "for the reason they were
the State's decoys," and erred in failing to instruct upon

the law relative to accomplices, decoys, and the corroboration of their testimony.

9. CRIMINAL LAW: appeal and error: assignment of errors: contradictory assignments.

In effect, the contentions of the appellant divide into the proposition that Page, Streeter and Risden were accomplices, which is equivalent to claiming that this is so as matter of law, and that the court erred in failing to instruct upon the law relative to accomplices and the corroboration of their testimony. Taking these up in their inverse order, we are not prepared to say that, where the instructions given are not excepted to, and there is no request for an instruction, that failing to charge upon these matters is reversible error. See *State v. Mahoney*, 122 Iowa 168. Be that as it may, the controversy between the State and the defendant here resolves into a claim by the defendant that the persons named were accomplices and the assertion of the State that they were not.

The State says the test is whether these witnesses could, upon the evidence, have been indicted for the offense for which the defendant was indicted, wherefore it appears, as matter of law, that they were not accomplices, because they could not have been so indicted. This contention suggests many interesting questions. It brings up for consideration whether, under a statute which makes all who aid in any degree chargeable as principal, it can be well said that, as matter of law, these witnesses could not have been indicted for keeping this house of prostitution—whether they could not thus have been indicted merely because they helped in some step in keeping it. On the other hand, it involves dealing with the well settled proposition that, ordinarily at least, whether a witness is or is not an accomplice is a jury question, even if it be the test whether they might be indicted for what the alleged principal is. All these questions we leave expressly undecided, because in this case we should. Its settlement is outside of the issues tendered. If the de-

fendant were complaining that the court refused to let
the jury say whether these witnesses were or were not ac-
complices, and the State responded that the refusal was not
error because they were not accomplices, as matter of law,
a different question would be presented, and the matters
which we leave undecided would have to be passed upon.
The trouble is that both parties contend the question is one
of law.   And the defendant is not complaining because a
question of fact was not submitted, or was decided by the
judge, but that corroboration, or the necessity therefor,
should have been submitted, because, as matter of law, the
witnesses were accomplices.  To put it in fewer words, the
essence of the defendant's complaint is that the court erred
in failing to hold, as matter of law, that these witnesses
were accomplices.  Let it be conceded that whether they were
or not was a jury question.  One who asserts that it was
not a fact question cannot maintain it was error not to sub-
mit it to the jury as a question of fact—and this though the
brief points present such a contention.

IX.   It is also complained the court did
not make clear to the jury what resorting
to such a place means, in the legal accept-
ance of the term; did not make clear by
instructions just what the term "inmate"
means, in legal significance.  That may be so, but the an-
swer has already been made.  No instructions were asked,
and none of those given were excepted to.

10. TRIAL: in-
structions:
form, requi-
sites and suf-
ficiency:
lack of clear-
ness: waiver.

X.   In the motion for new trial, one
ground is the alleged misconduct of the jury,
in that they communicated to the outside, so
that the county attorney, assistant and
others knew how the jury stood when they
had been out for twenty-four hours.  That motion asserts
that at least three of the jurors became sick, and used their

11. NEW TRIAL:
proceedings
to procure:
misconduct
of jurors:
unverified
motions:
criminal law.

sickness, pain and suffering as an argument upon those voting for acquittal to vote for conviction, in order to get release; that the court indicated he would keep them together for a second night, and, after obtaining their evening meal, they promptly brought in a verdict of guilty; that counsel for defendant was advised by a juror that the jurors finally said they had been in the jury room for thirty-two hours, and they did not care what happened; that the. length of time the jury was kept together tired and sickened them, so that they were not able to give fair and due consideration to defendant's case.

We are not called upon to say whether, if all this were proved, it would avoid the verdict. The motion is not verified, and has no evidence to support its assertions. Those assertions are not proof.

We find no reversible error. Wherefore the judgment below must be—*Affirmed.*

Gaynor, C. J. Ladd and Evans, JJ., concur.