STATE OF IOWA, Appellee, v. VALARIE MAUCH (alias VALARIE MARSH), Appellant.

No. 46532.

FEBRUARY 6, 1945.

REHEARING DENIED APRIL 6, 1945.

Walter F. Maley, of Des Moines, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, and Thomas M. Healy, County Attorney, for appellee.

MILLER, J.—On October 22, 1943, defendant was charged by county attorney's information with the crime of keeping a house of ill fame, as defined by section 13175, Code, 1939. On November 22, 1943, she entered a plea of not guilty. Trial was had, commencing on December 7, 1943, resulting in defendant's conviction, from which she appeals to this court. The brief and argument filed in her behalf in this court sets forth her assignments of error in six divisions. Each division is subdivided to assert various propositions of law. The case can be more understandingly disposed of if the order of presentation is changed somewhat from that employed by defendant's counsel.

I. Defendant's Division VI asserts that the court erred in overruling her motion for a directed verdict when made at the close of the State's evidence and when renewed at the close of all the evidence, and in overruling that part of the motion for new trial which again asserted that the evidence was insufficient to sustain a verdict of guilty. We find no merit in such contention.

This court has recognized repeatedly that the crime here charged is one of darkness and secrecy, that witnesses are naturally reluctant to publish their own shame by giving evidence of their participation in such acts, so that guilt is usually established by proof of facts and circumstances which are badges of a bawdy house, and testimony of its reputation as such, from which the inference of guilt is so strong as to exclude reasonable doubt. It is quite obvious that it would not be desirable or proper to here set forth in detail all of the evidence of this character which the record contains. A brief summary of the high lights will suffice.

There is no dispute but that the defendant was the owner of the premises herein and, while she owned a bungalow where she claimed to make her home, it is also shown without serious dispute that defendant operated the premises herein. Defendant kept roomers there and furnished them meals if they so desired, but she had no license to operate a hotel or restaurant and there were no signs advertising the fact that she furnished rooms or meals. Men, in groups of from one to eleven, visited the premises at late hours of night, as late as four a. m. Taxicabs drove up to the premises and discharged passengers, always men, at the house. The callers were often admitted at the door by defendant. The callers often appeared to remain for only a short time. The house was near a railroad depot. The inmates of the house were observed on the porch, scantily attired, when troop trains were going through. On June 7, 1942, the police were at the house and found a girl and a man, not husband and wife, together in an upstairs bedroom; the girl was hiding in a clothes closet, clad in a bathrobe; the man was sitting on the bed putting on his trousers. In 1942 a young woman complained that her father had been robbed at defendant's place; defendant asserted to the police that the man had been there but had spent only $7 and that "the girl had earned this money and had deserved it." The chief of police, a special agent for the railroad, and various police officers testified that defendant's reputation for chastity and virtue was bad and that the reputation of the house was that of a house of ill fame.

On September 15, 1943, the house was raided under a search

warrant for narcotics by D. V. Carter, special agent of the State Narcotics Division, and several members of the police force. They discovered five women besides defendant. The three younger women were rather scantily attired in pajamas or slacks. Defendant wore a loose blouse and shorts. A young sailor was present. One of the women was observed hastily hiding something in a drawer. It was a memorandum book, identified as Exhibit 5. The jury was warranted in concluding that the entries therein were those of the amounts of receipts of defendant's prostitutes and the division of earnings. When the book was discovered, the woman who was hiding it said, "Oh my God, he has got the book." Defendant offered the chief of police $1,000 for the return of the book to her. Several bottles of whisky and gin with liquor seals of foreign states were found, together with "shot" glasses, a punchboard, douche bags, vaseline, and antiseptic used for feminine hygiene. In the room referred to as Marie Turner's were found a quantity of narcotics and hypodermics and needles.

Without further elaboration, we are satisfied that the evidence of various badges of a bawdy house, taken with the testimony of the reputation of the place as being a house of ill fame, produced an inference of guilt that was strong enough to exclude reasonable doubt and was sufficient to sustain the conviction. The following decisions of this court support our conclusion herein: State v. Schaffer, 74 Iowa 704, 39 N. W. 89; State v. Burns, 145 Iowa 588, 124 N. W. 600; State v. Gill, 150 Iowa 210, 129 N. W. 821; State v. Toombs, 79 Iowa 741, 45 N. W. 300; State v. Porter, 130 Iowa 690, 107 N. W. 923; State v. Flynn, 175 Iowa 604, 155 N. W. 254; State v. Burley, 181 Iowa 981, 165 N. W. 190; State v. Steen, 125 Iowa 307, 101 N. W. 96.

II. Defendant's Division I sets forth a number of errors, asserting that the court erred in overruling her motion for a continuance, in overruling her motion for change of place of trial, in permitting evidence to be received that narcotics were found on the premises, in refusing to grant her request that she be tried first on the charge of illegal possession of narcotics then pending against her, in overruling her motion for change of venue. Division II asserts that the court erred

in admitting in evidence the punchboards, bottles of whisky and gin, drinking glasses, narcotics and narcotic equipment, which were found on the premises at the time of the raid on September 15, 1943. These various contentions are, in some respects, related to each other and will be considered together.

Following the raid of September 15, 1943, three charges were filed against defendant. One was for keeping a house of ill fame. One was for illegal possession of narcotics. The third was for condemnation of her automobile for illegal transportation of narcotics. On December 6, 1943, the day before the trial commenced, defendant filed motions for a continuance, for a change of place of trial, and for a change of venue. Defendant filed a supporting affidavit to the petition for a change of venue and verified the motions for a continuance and for a change of place of trial, and affidavits of a physician and three residents of Fort Dodge were attached to the motions for continuance and for change of place of trial.

It is difficult to briefly summarize the claims thus asserted. Essentially they were these: When defendant was arraigned on November 22, 1943, the presiding judge displayed a decided prejudice against her; Marie Turner, one of defendant's witnesses, was ill and could not attend the trial; if present she would testify that she operated defendant's automobile without defendant's consent (when transporting narcotics); Marie Turner was induced by a "stool pigeon" of Carter to use defendant's car to transport said narcotics; Marie Turner, as a witness, would deny that defendant was connected with the narcotics and would deny that defendant operated a house of ill fame; at the time of defendant's arraignment defendant asked the judge that the case be assigned for trial after Marie Turner had recovered, that ample time be given her counsel to prepare for defense, that the forfeiture proceeding be tried first; the judge stated that defendant had already had ample time to prepare for trial, that the illness of Marie Turner offered no excuse for any delay, that defendant could make formal application for continuance; the judge frequently expressed himself very emphatically as being prejudiced against defendant; certain newspaper articles had appeared in the Fort Dodge Messenger and Chronicle which were highly inflammatory and prejudicial to de-

fendant, identifying defendant with the narcotic charge and keeping a house of ill fame, and defendant could not receive a fair trial at Fort Dodge.

The State filed a resistance to the motions for continuance and for change of place of trial and this was apparently considered to be also a resistance to the petition for a change of venue. The State contended: The motion for continuance was not in proper form, was filed too late and there was no showing of diligence; the claims as to testimony of Marie Turner are confused by being linked with legal conclusions and with facts perhaps material to the condemnation proceedings but not competent on the trial of this case; the testimony as to finding narcotics would be competent as part of the res gestae; the State admitted that Marie Turner would testify as follows:

"That her name is Marie Turner living at 309 South 4th Street, in the City of Fort Dodge, Iowa, on September 15, 1943. If present she would testify that any narcotics and equipment found at the premises known as 309 South 4th Street, in the City of Fort Dodge, Iowa, and 441 11th Avenue S. W. were property of Marie Turner and that the defendant in this case had nothing to do with the same and had no knowledge that the same were located at either place. That she would further testify that she was using certain drugs and that she personally secured said narcotics and that the defendant had no knowledge of where she obtained them and did not participate in the acquisition of narcotics and that the narcotics and equipment found on the premises were the sole property of Marie Turner. That Marie Turner if present in Court would deny that the defendant was operating a house of ill fame at 309 South 4th Street in the City of Fort Dodge, Iowa."

The State also asserted that defendant's references to the condemnation of the automobile had no bearing on the case involving keeping a house of ill fame; denied that the articles in the Fort Dodge Messenger and Chronicle were inflammatory or prejudicial, asserting that they were items of legitimate news, and denied that there was any excitement or prejudice in Webster county against defendant.

The court's findings on the foregoing motions comprise ten

pages of the record. The court determined that evidence of the finding of narcotics on the premises was admissible as a part of the res gestae; the narcotics case was an entirely different case and the trial of this case need not be postponed until that case was tried. As to the absence of Márie Turner, the court determined that the State's admission as to her testimony was complete and full and obviated the force of that ground of defendant's motion. As to the newspaper articles, the court determined that the showing was insufficient under the decisions of this court, that there was no such feeling in the community as would prevent defendant's having a fair trial. On the charge of personal prejudice, the court discussed the facts and circumstances in detail and determined that it was not prejudiced against defendant and denied ever making any statements to that effect. The motions for continuance and for change of venue were overruled.

The rule which the court invoked in determining that the evidence of finding narcotics on the premises was competent was the same rule which was later invoked in determining that the punchboards, bottles of whisky and gin, drinking glasses, narcotics and narcotic equipment, found on the premises at the time of the raid, were competent evidence. There was no error in such rulings. In the case of State v. Mulhollen, 173 Iowa 242, 246, 155 N. W. 252, 253, this court expressly held that the presence and use of liquor on the premises could be shown in a prosecution for keeping a house of ill fame, and stated as follows:

"And if this ground were absent, we do not think the evidence necessarily objectionable as tending to show the commission of a separate crime. Intoxicating liquor is the companion of many crimes, and we see no reason why its presence and its use may not be shown as one of the incidents of an alleged crime under investigation, and especially a crime of such nature as the one charged herein."

Again, in the case of State v. Burley, supra, 181 Iowa 981, 985, 165 N. W. 190, 192, we stated:

"If, then, we are to sustain appellant, we must hold that, in spite of these indications in our decisions, it is, as [a] matter of law, immaterial and irrelevant to show, in proof of a charge

of maintaining a house of ill fame, that the owner furnished liquor to visitors. So to hold is to throw away common knowledge that liquor getting and drinking is a badge of the bawdyhouse. We are not minded to do this.''

We are of the opinion and hold that the court was right in holding that the presence and use of narcotics and punchboards as well as liquor constituted badges of a bawdy house so that the evidence which was objected to herein was competent. We are also satisfied that there was no error in denying defendant's request to have the narcotics case tried first.

■ The court was also right in holding that the State's admission as to Marie Turner's testimony was full and complete and obviated the ground of the motion for a continuance. Section 13843, Code, 1939, makes the provisions for continuance in civil cases applicable to criminal cases. The admission made by the State satisfied the requirements of Rule 183 of the Rules of Civil Procedure. The granting or refusal of a motion for a continuance rests largely in the sound discretion of the trial court. There was no such abuse of discretion as would warrant or require a reversal herein. State v. Papst, 221 Iowa 770, 266 N. W. 498; State v. Twine, 211 Iowa 450, 233 N. W. 476; State v. Candler, 204 Iowa 1355, 217 N. W. 223; State v. Sterman, 199 Iowa 569, 202 N. W. 222.

■ The motions for change of place of trial and for change of venue were also properly overruled. The attack upon the presiding judge created a delicate situation. As the judge pointed out, the easy way would have been to avoid the issue and step aside. But the court had the duty to decide the question. It did so with reluctance and with a searching inquiry into the facts. In view of the record thus made, we find no such abuse of discretion as would justify a reversal at our hands. State v. Williams, 197 Iowa 813, 197 N. W. 991, and cases cited therein. The claim that publicity in the newspapers warranted a change of venue was also a question upon which the court had considerable discretion and the record shows no abuse thereof. State v. Dean, 148 Iowa 566, 126 N. W. 692; State v. Hassan, 149 Iowa 518, 128 N. W. 960.

■ III. Division III of defendant's brief and argument as-

serts that the court erred in admitting evidence (1) that defendant had been charged with certain offenses against the city ordinances (2) that appearance bonds had been forfeited (3) that roomers and boarders at defendant's place had been charged with offenses under the city ordinances. Defendant asserts that this evidence consisted of a series of inferred facts which are wholly foreign to any legitimate issue in the case and manifestly was intended to prejudice and did prejudice the jury. We are of the opinion that the imputation of improper motive to the prosecution is not sustained by the record. The evidence was introduced to show the character and reputation of the place and to furnish evidence of additional badges of a bawdy house.

■ On cross-examination defendant testified:

"I have been taken to the Police Station twice. I posted a bond. In June 1941, they filed a charge against me for a disorderly house and I put up a $100.00 bond. I did not contest the charge. They never gave any of that money back to me. I was told to let them have the money and not to resist the charge."

The record shows no objection to this testimony. This testimony was quite obviously offered as an admission on the part of defendant of unchaste conduct. Certainly, in the absence of an objection thereto, there is nothing for us to review. State v. Ostby, 203 Iowa 333, 342, 343, 210 N. W. 934, 212 N. W. 550, and cases cited therein.

■ The evidence as to charges being filed against others than defendant and as to bond forfeitures is as follows: The man and woman who were apprehended in a bedroom at defendant's place on June 7, 1942, were arrested and charged with disorderly conduct; the record of the police court was introduced to show that three of defendant's "roomers" were charged with frequenting a disorderly house, following the raid of September 15, 1943, and two of them pleaded guilty and paid fines of $75 each, while the third forfeited a bond of $75. We hold that such evidence was competent as tending to show the reputation of the house, the purpose of those resorting to

it, and the character of the persons occupying the house. State v. Flynn, supra, 175 Iowa 604, 155 N. W. 254.

■ IV. Division IV of defendant's brief and argument asserts that the court erred in refusing to give defendant's requested instructions 1 to 6 inclusive and in giving instructions 6, 7, 8, 9, 10, 12, 13, 14, and 15. There is no merit in the contention.

Some of the contentions here made were not presented to the court below. They cannot be considered for the first time on appeal. State v. Bingaman, 210 Iowa 160, 230 N. W. 394. And, where the law set forth in requested instructions is substantially given by the court, there is no ground for a reversal. State v. Harness, 214 Iowa 160, 238 N. W. 430, 241 N. W. 645. The defendant's requested instruction 3 asked that the jury be advised that acts of prostitution or lewdness by defendant alone would not support a conviction herein. While there are cases which tend to support such a statement of the law when applied to an isolated transaction, there are other authorities which support the rule that a regular course of prostitution by one person will sustain a conviction of keeping a house of ill fame. It is not necessary to discuss such authorities. The instructions given clearly advised the jury that a regular course of indiscriminate sexual intercourse was necessary to support a conviction herein.

Objection is made that the court referred to various exhibits found on the premises, the contention being that the exhibits were incompetent. In view of our holding on the competency of such exhibits, there is no merit in the contention. The other assignments have been carefully considered. The propositions now urged have been decided adversely by this court in previous opinions and it is not necessary to prolong this opinion by a restatement of such holdings.

■ V. Division V of defendant's brief and argument asserts that error arose out of (a) the cross-examination of defendant as to a prior conviction of a felony (b) evidence of defendant's arrest and interrogation at the police station (c) undue restriction of the cross-examination of the State's witness Carter (d) introduction of testimony as to the reputation of

the premises (e) the introduction of improper evidence in rebuttal. We find no merit in the contentions.

The cross-examination of defendant as to her prior conviction of a felony sought to develop the fact that the conviction was for illegal possession of narcotics. Objection to the question was sustained and the jury was promptly admonished to disregard the question and consider only the fact that defendant had been convicted of a felony. There is no basis for the contention here made. The evidence of defendant's interrogation at the police station was that an FBI agent asked defendant to identify certain persons whose pictures were shown to her. We find no reversible error. The cross-examination of Carter sought to develop what evidence of narcotics he had which he had not produced. We do not think that the court abused its discretion but rather confined the cross-examination to the issues then being tried. The testimony as to the general reputation of the premises and of defendant was admissible under repeated holdings of this court. The fact that the witnesses were police officers did not affect its competency. State v. Pickett, 202 Iowa 1321, 1325, 210 N. W. 782. The evidence objected to on rebuttal pertained to an incident which defendant's testimony had developed. There was no error in permitting the State to show its version of the incident.

The judgment is—Affirmed.

All JUSTICES concur.