STATE OF IOWA v. JAMES ARTHUR, Appellant.

**Territorial jurisdiction:** JUDICIAL NOTICE. Pottawattamie county is divided for judicial purposes by the west line of range 40, and where it was shown that a crime was committed in said county at a place fifteen miles east of Council Bluffs, the Supreme Court will take judicial notice of the fact that such place is within the jurisdiction of the western division of the county.

**Criminal evidence:** PRIVILEGE OF ACCUSED: WAIVER. An accused cannot be compelled to furnish evidence against himself, but he may waive his right to withhold the same; and when a defendant voluntarily surrendered his shoes to an officer, evidence of a comparison of the shoes with foot prints in the snow was competent.

**Burglary:** CONSPIRACY: EVIDENCE. On a prosecution for burglary where the evidence of a conspiracy between defendant and another to commit the crime is insufficient in itself to justify a verdict of guilty, the issue of conspiracy should not be submitted. Evidence held sufficient to show conspiracy.
Justice Deemer dissenting.

*Appeal from Pottawattamie District Court.*— HON. A. B. THORNELL, Judge.

SATURDAY, DECEMBER 16, 1905.

DEFENDANT was indicted with one John Bernstein, charged with the crime of breaking and entering a bank building in the town of Treynor, in Pottawattamie county. Defendant alone pleaded not guilty, and, being convicted, was sentenced to ten years' imprisonment in the penitentiary. From this sentence he appeals.— *Reversed.*

*W. H. Killpack,* for appellant.

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

McCLAIN, J.—I.  No question is made as to the fact that the Treynor Savings Bank was broken and entered, as charged in the indictment; but one of the objections raised for defendant is that there is no evidence that the venue of the crime was in Pottawattamie county west of the west line of range 40 so as to bring it within the jurisdiction of the court in which the case was tried; for Pottawattamie county is divided into two portions for judicial purposes, and the trial court had only jurisdiction of offenses committed in that portion of the county west of the line above described.  The evidence shows, however, that the bank building referred to by witnesses as having been broken and entered was at the town of Treynor, which is described as in Pottawattamie county, fifteen miles east of Council Bluffs, where the trial was had; and we can take judicial notice of the fact that any point in the county not further east from Council Bluffs than fifteen miles is west of the west line of range 40.  There is no difficulty, therefore, as to the sufficiency of proof of the venue.

1. TERRITORIAL JURISDICTION: judicial notice.

II.  The defendant and Bernstein were arrested together, the next day after the commission of the crime, at a saloon which, as we understand it, is situated between Treynor and Council Bluffs, and were taken to the town of Treynor, and from there to the county jail at Council Bluffs.  During the evening they were separately interrogated by the sheriff.  Defendant was confined during the night in a steel cell in the jail, where he was visited by the sheriff the next morning and directed to give up his shoes.  He complied with this direction, and another pair was supplied to him.  The sheriff and others subsequently made use of one of these shoes for the purpose of comparing it with a track found in a snowbank about a quarter of a mile west of Treynor, where a wagon which had been taken from a livery stable in the town of Treynor on the night of the breaking of the bank was found

2. CRIMINAL EVIDENCE: privilege of accused: waiver.

abandoned.   Over objections for defendant, the correspondence of this shoe with the track was testified to by the persons who made these comparisons, and it is contended for defendant that this evidence was incompetent, for the reason that defendant could not be compelled to furnish testimony incriminating himself.   The objections were predicted upon the rule announced in *State v. Height*, 117 Iowa, 650, and *State v. Sheridan*, 121 Iowa, 164, in which it was held error to admit in evidence facts of this kind, ascertained by a personal examination of defendant while in custody, against his protest, or by unlawful search of his house.

The rule is not applicable, however, to the state of facts disclosed in this record; for it does not appear that defendant made any objection to surrendering his shoes, but, on the contrary, it seems that he surrendered them voluntarily and without compulsion.   It is not enough to say that defendant had reason to believe that his shoes would be taken from him by force if he did not voluntarily surrender them.   His right not to furnish evidence against himself was one which could be waived, and must be deemed to have been waived if not insisted upon.   It is too well settled to require the citation of authorities that comparisons of this character may be testified to as against defendant, where the means of making such comparisons have been procured without violation of any right or privilege of the defendant insisted on by him.   See State v. Height, *supra,* and *State v. Edwards,* 51 W. Va. 220, (41 S. E. Rep. 429, 59 L. R. A. 465).   Many illustrations are given in the notes to the case last cited in 59 L. R. A. 465.

III.   The instructions of the court to the effect that, if defendant and Bernstein confederated together to commit the crime, defendant was responsible for the acts of

3. BURGLARY:     Bernstein, and that testimony relating to the
conspiracy:
evidence.        conduct of Bernstein while proceeding to carry

out the common purpose might be shown as against the defendant, are objected to by counsel on the theory that there

was no competent evidence of a conspiracy. He contends that it was error, therefore, to submit the question to the jury on the theory of a conspiracy. In this connection it is proper, also, to notice exceptions taken to testimony tending to connect Bernstein with the commission of the crime in question. These objections on the part of defendant go to the very foundation of the case for the prosecution as against this defendant; for if there was not sufficient evidence of conspiracy or confederation between defendant and Bernstein, or of aiding and abetting on defendant's part, the prosecution must fail. There is not the slightest evidence, aside from that which would implicate defendant through his connection with Bernstein, that he had any part whatever in the crime of breaking and entering the bank building at Treynor. The correspondence between defendant's shoe and the tracks found in the snow a quarter of a mile from Treynor might tend to show that defendant was the person or one of the persons who took the wagon from the livery stable at Treynor and abandoned it in the snow. But this, we think, would not be sufficient of itself to implicate defendant in the crime of breaking and entering the bank building which was committed in Treynor on that night.

The question as to whether there was evidence of conspiracy or confederation between defendant and Bernstein, or of aiding and abetting by defendant, such as to support the instructions relating to conspiracy, is therefore simply another phase of the general question whether there was sufficient evidence to support defendant's conviction; and here it is to be noticed that the court excluded from the consideration of the jury, as bearing upon the question of conspiracy, the testimony of witnesses who claimed to have seen defendant and Bernstein together in Omaha and in Minden prior to the day preceding the commission of the crime, when they were unquestionably together at the barn of a farmer residing not far from the town of Treynor. The testimony as to their prior associations went to the jury

under the instruction of the court only as impeaching the testimony of Bernstein given in behalf of the defendant. If this evidence had been offered and relied upon by the State in making out its case against defendant, it would, perhaps, have been competent and material. See *State v. Donavan,* 125 Iowa, 239.

The facts relied upon by the State as tending to establish a conspiracy or confederation between defendant and Bernstein in the commission of the crime, which, it must be conceded for the purpose of this case was actually committed by Bernstein, are briefly stated as follows: On the day before the crime was committed, defendant, in company with Bernstein and two companions, concealed themselves in the barn above referred to, about five miles from Treynor. The next morning defendant and Bernstein together hurried away in a sneaking manner from the barn, and were captured about noon of the same day as already stated at a point between Treynor and Council Bluffs. The crime was committed between the time that these parties went to the barn the evening before and the time they were seen leaving it on the morning following.

The only theory favorable to the prosecution, which is in any way consistent with the facts shown, is that during the night defendant went with Bernstein and assisted him in the commission of the crime; for no other conspiracy or confederation is in any way indicated by the evidence. Even conceding, as argued by counsel for the State, that Bernstein had an accomplice in the actual commission of the crime, it does not appear that defendant, and not one of the two other men, who were concealed in the barn at the same time and who later in the following day escaped therefrom, rendered this assistance. As a matter of fact, however, it does not appear from the record that any one aided or assisted Bernstein in the robbery of the bank. The fact that a revolver was found in defendant's possession when he was arrested would certainly not tend in any way to connect him

with this particular crime. His purpose in traveling through the country in bad company might indicate general criminal intentions, but would not tend to implicate him in the specific crime of breaking and entering a bank building.

The statements made by defendant while under arrest, explaining the circumstances under which he came to be associated with Bernstein and his companions in going to the barn, furnished no proof of any criminal purpose so far as the crime at Treynor was concerned, and would not help out the theory of the prosecution. The jury may have been justified in regarding them as untrue, but the making of false statements as to the association with Bernstein in the barn would not alone be sufficient to connect him with the transaction at Treynor. It seems to us that this is a case in which some testimony was properly admitted as tending to connect the defendant with the crime, which might have been material, with other evidence, to establish such connection, but which in itself, taken as a whole and giving it all the collective weight to which it is entitled, is entirely insufficient to justify a verdict of guilt; and we hold, therefore, that the court was not justified in giving any instructions on the subject of conspiracy as between the defendant and Bernstein, nor in sustaining the verdict as against defendant's motion for a new trial on the ground of insufficiency of the evidence.

The conviction is reversed, and the case is remanded for a new trial.— *Reversed* and *remanded*.

DEEMER, J. (dissenting).— I think there was enough evidence to take the case to the jury, and that we should not interfere with the verdict because of lack of testimony.

# REPORTS

OF

## CASES AT LAW AND IN EQUITY

DETERMINED BY THE

# SUPREME COURT

OF THE

## STATE OF IOWA

AT

## DES MOINES, JANUARY TERM A. D. 1906

AND IN THE SIXTIETH YEAR OF THE STATE.