STATE OF IOWA, Appellee, v. EVERETT JOY, Appellant.

**RECEIVING STOLEN GOODS:** Corpus Delicti and Venue—Evidence.
1  Evidence reviewed, and held ample to establish the *corpus delicti* and venue in a prosecution for receiving stolen property.

**RECEIVING STOLEN GOODS:** Elements—Larceny (?) or Receiving
2  Stolen Property (?) Evidence tending to show that an accused drove his conveyance to a certain place and there waited until his companion returned, a short time later, with stolen property, which was then loaded by both parties into the conveyance, is ample (guilty knowledge being shown) to justify a jury finding that the accused was guilty of receiving stolen property.

**RECEIVING STOLEN GOODS:** Instructions—Harmless Omission. Ob-
3  jection to an instruction permitting the jury to find a verdict of guilty of receiving stolen property if the accused received the property from "some person," instead of "some *other* person," is too hypercritical to warrant an inference of prejudice.

**LARCENY:** Ownership—Non-variance. No variance is presented by an
4  allegation of the ownership of stolen property and mere proof that the said alleged owner had delivered the same to a common carrier and received a bill of lading showing shipment to another party.

**LARCENY:** Elements—Non-consent to Taking. Non-consent to the
5  taking of property is inferable from the fact that the owner had delivered it to a common carrier, who had placed it in a sealed car, and that the car had been broken open and the property removed.

**CRIMINAL LAW:** Evidence—Admissions—Presumption. Admissions
6  by an accused of guilt are presumptively voluntary. (See Book of Anno., Vol. 1, Sec. 13897, Anno. 18 *et seq.*)

Headnote 1:  16 C. J. pp. 767, 772.  Headnote 2:  34 Cyc. p. 527. Headnote 3:  17 C. J. p. 339.  Headnote 4:  34 Cyc. p. 523.  Headnote 5: 34 Cyc. p. 529.  Headnote 6:  16 C. J. p. 629.

Headnote 1:   68 L. R. A. 40 *et seq.*; 28 L. R. A. (N. S.) 536; L. R. A. 1916B 846; 17 R. C. L. 64.   Headnote 2:   17 R. C. L. 9.   Headnote 4:   17 R. C. L. 70.   Headnote 5:   30 L. R. A. (N. S.) 950; 17 R. C. L. 49.

*Appeal from Harrison District Court.*—W. C. RATCLIFF, Judge.

DECEMBER 14, 1926.

REHEARING DENIED MARCH 22, 1927.

Defendant appeals from a judgment of conviction of the crime of receiving stolen property.—*Affirmed.*

*William P. Welch* and *H. L. Robertson,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

MORLING, J.—I. The evidence of defendant's complicity in the stealing or receipt of the property is principally that furnished by his own admissions to the sheriff. The defendant contends that there is no evidence of the *corpus delicti,* or of the venue, except his admissions. A freight car in the yards of the Illinois Central Railway Company at Logan was loaded with 148 cases of eggs, which were checked and billed and the car sealed about 10 o'clock P. M., August 3d. The car was moved east the next morning. At Yetter, the conductor went to open the car, to load more eggs, and found the seal broken and 14 cases gone. He testifies that the car could not have been entered and the eggs removed after leaving Logan without his knowing about it. The evidence that 14 cases of eggs were stolen from the car while in the yards at Logan is, regardless of defendant's admissions, very satisfactory. That the eggs were concealed and that defendant, with Marvin, on the afternoon of August 4th, took eggs (though not specifically shown by independent evidence to be the same eggs) to another town, and that Marvin there sold them, satisfactorily appears from independent evidence. The *corpus delicti* of the larceny and of the concealment of stolen property is shown independently of defendant's admissions. *State v. Westcott,* 130 Iowa 1.

1. RECEIVING STOLEN GOODS: corpus delicti and venue: evidence.

II. Defendant's main contention is that the evidence shows him guilty of larceny, and not of receiving stolen property. Defendant told the sheriff, in substance, that, on the night of August 3d, Marvin came to him and asked if he wanted to make some easy money. It does not appear that anything was said as to how Marvin proposed to make this easy money, or that anything was said about stealing eggs. Defendant borrowed his brother's automobile, and drove with Marvin to the railroad yards in Logan. This was after midnight. Defendant stayed in the automobile. Marvin disappeared in the darkness, and returned with a case of eggs which he placed on the ground beside the automobile. This Marvin did seven times. While defendant in his admissions to the sheriff spoke of Marvin's going over to the car and getting the eggs, he said that he could not see the car. Defendant and Marvin together put the seven cases in the automobile and took them away and hid them. They then returned to the yards, and, in like manner seven other cases were brought by Marvin to the automobile, loaded, and taken away. Part of the eggs were afterwards taken by Marvin and defendant from their place of concealment and sold, and the proceeds divided.

*2. RECEIVING STOLEN GOODS: elements: larceny (?) or receiving stolen property (?)*

Defendant could not be convicted of larceny unless he was implicated in the taking of the property. If he had no complicity in the theft, and no connection with the property until after the larceny was completed, and he then received or aided in concealing the stolen property, knowing it to have been stolen, he was guilty not of larceny, but of receiving stolen property. *People v. Disperati*, 11 Cal. App. 469 (105 Pac. 617), and cases cited. Defendant did not take the eggs out of the car. The larceny was completed when the thief lifted the cases from their place in the car and obtained absolute possession, with intent to steal them. The removal of the eggs from the railroad grounds was not an essential element of the crime of larceny. On the evidence, the larceny might have been fully completed before the defendant saw or touched the eggs. When he first saw them, some, and perhaps all, were already stolen property. It may be that the evidence would warrant a finding that the defendant was so implicated in the original taking as to be guilty of larceny. Whether Marvin alone stole the eggs, without the complicity of

defendant in the original theft, or whether defendant was not implicated in the theft, but received them from Marvin or aided Marvin in concealing them, knowing them to have been stolen, was, on the evidence, a question of fact for the jury, and not of law for the court.

III. The defendant complains that the court in the instructions permitted the jury to find the defendant guilty of receiving stolen property from "some person or persons," whereas he should have inserted the word "other"

3. RECEIVING
STOLEN GOODS:
instructions:
harmless omission.

before the words "person or persons." The claim is that, by such instructions as given, the court permitted a finding of guilty of the crime of receiving stolen property although the defendant was himself the thief. We are of the opinion that, on a fair consideration of all the instructions, the jury could not have been misled in that respect, and that the exception is not well founded.

IV. It is claimed that, while the indictment charges the property to have been that of the Logan Produce Company, the evidence shows that the property had been delivered to a common carrier; that it was consigned to another;

4. LARCENY: own-
ership: non-
variance.

and that the Logan Produce Company was, therefore, no longer the owner. The evidence is that the Logan Produce Company delivered the eggs to the railroad company; that a bill of lading was made out for them to a firm at Rockwell City. The bill of lading was taken by the Logan Produce Company. There is no showing that the bill of lading was ever delivered to the consignee, nor, of course, is there any showing of the relationship of the consignee to the consignor, whether the consignment was on sale to the consignee, or whether the consignment was for a sale by the consignee on account of the consignor. It is also claimed that a member of the Logan Produce Company who had no part in the shipment

5. LARCENY: ele-
ments: non-con-
sent to taking.

of the eggs, and, so far as appears, had no part at all in the business connected with them, should have been proved not to have consented to the taking of the eggs by the alleged thief. The evidence is that this other partner had nothing to do with the shipment; that he was out of town. The eggs were in the possession of the Illinois Central Railway Company. The car had been sealed, but the seal was broken and the eggs removed. Non-consent

sufficiently appears from the circumstances. *State v. Prentice,* 192 Iowa 207. The sufficiency of the proof of the alleged ownership was for the jury.

V. It is contended that the evidence of admissions was inadmissible because the admissions were not shown to have been voluntarily made. The presumption is that they were voluntary.

6. CRIMINAL LAW: evidence: admissions: presumption.

There is no evidence to the contrary. The evidence was admissible. *State v. Storms,* 113 Iowa 385; *State v. Penney,* 113 Iowa 691. The 31 assignments of error raise no other questions demanding discussion.

The defendant was a boy, only 18 years of age, and a strong appeal for sympathy for him is made by his counsel. He evidently was allowed to remain out nights and to fall into bad company. He was, however, of the age of responsibility, and these considerations are for another department of the government. We find no error.

The judgment is—*Affirmed.*

DE GRAFF, C. J., and EVANS and VERMILION, JJ., concur.