STATE OF IOWA, appellee, v. FELIX A. WILLIAMS, appellant.

No. 48324.

(Reported in 62 N.W.2d 742)

FEBRUARY 9, 1954.

Henry T. McKnight, James B. Morris, Jr., and Archie M. Greenlee, all of Des Moines, for appellant.

Leo A. Hoegh, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Clyde E. Herring, County Attorney of Polk County, for appellee.

OLIVER, J.—The indictment charged defendant committed burglary of the dwelling house of Mrs. Eleanor Dill at 294 East 17th Street, in Des Moines, in the nighttime, with intent to commit larceny, and, after having entered such dwelling house, assaulted Mrs. Dill. Mrs. Dill testified she slept on a divan on the first floor of her house. Her two small children and her sister slept on the second floor. Her husband was in the Army in Germany. About 1 a. m., June 2, 1952, she awakened to find the light of a pencil flashlight shining in her eyes. A male voice whispered, "Don't scream or I will kill you." The man then asked her if she had any money. She said she had two dollars and started to arise to get it. He pushed her down on the divan and told her to be quiet or he would kill her. He kept repeating this threat in a soft voice or whisper. He said he had a knife. She heard him open it and felt it on her side. Then he compelled her to remove her nether garment and, under threat of death, proceeded to have intercourse with her. Before he completed this act he ran out of the house, apparently frightened by something. The outside doors and windows of the house had been closed when Mrs. Dill retired.

For some time before and after this occurrence, officers Buckroyd and Rider of the Des Moines police department were assigned to the prowler detail covering a considerable area on the east side of Des Moines. Mrs. Dill's home was in this area. September 23, 1952, at about 11:10 p. m. they went to 1711 East Grand Avenue in response to a call. "We were looking for the prowler." Buckroyd went around one side of the house, Rider around the other. At the rear of the house Rider apprehended the defendant who called out, "I give up. Don't shoot." The officers searched defendant and took from him a knife, a screwdriver and a pencil flashlight. He was wearing a cap, tennis shoes and a jacket. He had left his billfold and keys at his home and there were no means of identification upon his person.

Defendant is a Negro, is married and has a family. He was employed by Manbeck Motor Company as a maintenance and general utility man. His home was about two miles distant from the place where he was captured. He said he came there in a streetcar but gave no reason for prowling that house. The officers promptly called for a patrol car which would take defendant to the police station. While awaiting its arrival they asked defendant about prowlings and burglaries.

One of the officers testified defendant said "he had been in so many houses that he couldn't remember how many." This place was only about three blocks from the home of Mrs. Dill. Both officers testified they then questioned defendant about the Dill burglary and he admitted he had committed it. Defendant, as a witness, did not deny any of the foregoing testimony concerning his capture and admissions. Nor did he testify or contend such admissions or statements were not made freely and voluntarily.

Officers Buckroyd and Rider later returned to the police station. They testified they then took defendant from jail to the detectives' office, went over reports and complaints of prowlings, burglaries, etc., and asked him whether "he did them." There were about two hundred of these and "we were trying to pick out the ones that we thought Felix was in on." Officer Rider testified he told defendant "that we had been looking for

him for a long time", and defendant said, "I have been in a lot of them [houses] but not all of them." Officer Rider testified also: "when I first read the report to Felix of someone breaking into 294 East 17th Street, Felix said that he did it." Defendant was returned to his cell at about 3 a. m.

Later that morning he was again questioned. In the afternoon he was taken to some of the houses which had been burglarized. There was testimony he stated he had entered Mrs. Dill's home by the front door; that before entering a house he would flash the pencil-light in windows and look in the front door to find out if any men were there, and that he used the screwdriver to pry screens from the windows of houses.

The following day, September 25, defendant was again interrogated and signed a typewritten statement in which he admitted the Dill burglary. He was taken to the show-up room for identification by various women. That afternoon he was formally charged with burglary of another dwelling and was taken before a magistrate and arraigned. That night Mrs. Dill viewed and listened to defendant in the show-up room and identified him. She testified he then admitted he had been in the Dill home, that he entered through the front door, asked her for money, attempted to assault her and left by the back door. The next day he was charged with three more burglaries, one of which was of the Dill dwelling. Later he was indicted for the Dill burglary. Trial resulted in his conviction of burglary with aggravation. Thereafter the court overruled his motion for new trial and sentenced him to the state penitentiary for life. Hence, this appeal by defendant.

I. January 24, 1953, defendant filed a petition for a change of venue alleging it would be impossible to select twelve unbiased jurors so that he could receive a fair trial in Polk County, because of the excitement and prejudice against him occasioned by certain articles published in Des Moines newspapers September 24 to October 2, 1952. These newspaper accounts had detailed his capture, questioning by the police and identification by women victims, and stated the police asserted he was the long-sought east-side prowler.

February 2 the court denied the change of venue, stating in part that the articles had been published four months pre-

viously and it appeared to the court "defendant can and will receive a fair trial by a Polk County jury.". Section 778.9 Code of Iowa, 1950, provides the court, in the exercise of a sound discretion, must decide the matter of such a petition according to the very right of it. We are satisfied the refusal of a change of venue was not an abuse of the discretion lodged in the trial court. This court has frequently so held in the face of showings stronger than here made. State v. Mauch, 236 Iowa 217, 224, 17 N.W.2d 536; State v. Smith, 219 Iowa 168, 172, 256 N.W. 651, and citations.

Furthermore, in this case some of the prospective jurors did not even remember the newspaper stories. The others remembered them only vaguely or disinterestedly. There was no indication of excitement or prejudice. No prospective juror was challenged for cause. The actual record as made on the impaneling of the jury effectively disposes of defendant's contention that an unbiased jury could not be secured because of excitement and prejudice against him. State v. Hamil, 96 Iowa 728, 729, 65 N.W. 395.

II. Defendant contends the court should have held his purported declarations, oral admissions, etc., made while in police custody, were involuntary as a matter of law, and his objections to evidence thereof should have been sustained on that ground. We do not agree with these contentions. It is true defendant testified the admissions were wrung from him by threats, intimidation and physical abuse. However, members of the police department and various other witnesses testified the statements were made freely and voluntarily and denied in detail his charges of threats, intimidation and abuse.

Defendant, several members of his family, and one other person testified his face and the side of his head were swollen and his lips and eye were cut by beatings administered to him, beginning when he was first interrogated at the police station. The police and various other persons who saw him during this period testified to the contrary and we are told photographs of defendant, then taken, discredit his story. The only visible physical disability noticed by the photographer was a bloodshot eye and defendant then said "he got something in it." A doctor

who examined him September 28, testified he noticed nothing except evidence of conjunctivitis of one eye, of which the common cause is a bacterial infection which follows a previous irritation of the eye by dust or wind, exposure or trauma. He could not obtain from defendant any history of the ailment.

The jury was instructed the statements or admissions of defendant should not be considered unless the jury found the same were voluntary, etc. Also the jury was given, in substance, a special interrogatory requested by defendant, "Do you under the evidence * * *, find that the alleged statements or admissions made by the defendant, Felix Williams, if any, to the police officers * * * were made by reason of any assurance of leniency or other inducement, or by means of threats, violence or abuse by the police officers of the City of Des Moines, or any of them?" The jury answered the interrogatory, "No."

It should be here stated that the court sustained defendant's objection to the offer by the State of his typewritten confession, because it was not limited to the offense charged in the indictment but referred also to other offenses.

■■■ The test of the admissibility of confessions is whether they were made freely and voluntarily and without compulsion or inducement of any kind. The evidence a statement relied upon as an admission or confession was or was not made freely and voluntarily may be so clear and undisputed as to make that a question of law for the court. But where the free and voluntary character of such statement is the subject of dispute or conflict in the evidence, the question is one of fact for the jury. State v. Crisman, 244 Iowa 590, 592, 593, 57 N.W.2d 207, 208, 209; State v. Hofer, 238 Iowa 820, 28 N.W.2d 475; State v. Johnson, 210 Iowa 167, 170, 171, 230 N.W. 513, and citations.

Defendant cites State v. Johnson, 241 Iowa 135, 39 N.W.2d 123, and State v. Archer, 244 Iowa 1045, 1049, 58 N.W.2d 44, 46. Neither case is here factually in point. The Johnson decision was based upon findings that: (1) evidence the confession was obtained by physical violence was not rebutted and the physical facts overwhelmed the mere denial of such violence and (2) there was undisputed evidence of threats defendant might be deprived of his son. In the Archer case the court found the con-

fessions were "the sole link connecting the defendant with the offense committed", were based upon the theories of the authorities and where there was no theory did not accord with demonstrable facts.

There are other differences between the record in the case at bar and the cited cases. One essential difference is that here the arresting officers testified plaintiff readily admitted the burglary of the Dill house in the few minutes which elapsed between his capture and the arrival of the patrol wagon. Defendant does not deny this testimony or attempt to explain his admission. Nor is there any evidence it was not made freely and without compulsion or inducement of any kind. Hence, it will be presumed to have been made voluntarily. State v. Joy, 203 Iowa 536, 540, 211 N.W. 213.

Defendant contends also his statements were inadmissible because they were secured when he was held in the city jail, illegally and without charge. Section 758.1, Code of Iowa, 1950, states a person arrested without a warrant shall without unnecessary delay be taken before a magistrate to whom the grounds of the arrest shall be stated by affidavit. Defendant had been in custody about forty hours before he was taken before a magistrate and charged with burglary of another dwelling. The next day, September 26, he was charged with the Dill burglary and two other burglaries.

However, there was some justification for this delay. At that time there were about two hundred reports of prowlers and burglaries on file. When the arresting officers returned to the police station after defendant was apprehended, they went over these reports at length with him and questioned him about them. They also proceeded to investigate various burglary reports, in the course of which they took defendant to a number of dwellings. They went to the Dill house the first day, September 24. She was absent and did not call and identify defendant until the night of September 25.

The doctrine of the more recent authorities seems to be that the holding of a suspect illegally without charge does not of itself make a confession involuntary and so in violation of due process, but is one of the indicia of undue pressure. State

v. Archer, 244 Iowa 1045, 1058, 58 N.W.2d 44, 51; Stein v. People of State of New York, 346 U. S. 156, 186, 187, 188, 73 S. Ct. 1077, 1094, 97 L. Ed. 1522; annotation in 19 A. L. R.2d 1331, et seq.

■ Moreover, in this case, there was evidence, already referred to, that defendant admitted his guilt of the Dill burglary at the time he was first placed in custody and before he was taken to the jail. Any subsequent illegal detention would not invalidate this admission. United States v. Mitchell, 322 U. S. 65, 69, 70, 64 S. Ct. 896, 898, 88 L. Ed. 1140; annotation in 19 A. L. R.2d 1345, et seq.

We conclude the trial court was correct in refusing to hold defendant's admissions and statements were involuntary as a matter of law.

■ III. Mrs. Dill viewed defendant in the show-up room of the police station and identified him by his voice together with his size and build. She testified she identified defendant's voice when he complied with the request of an officer, made at her suggestion, that he repeat, in a whispering voice, what he said to her that night in her home. At the trial defendant testified his compliance with the request was not voluntary but was procured by previous abuse and threats of police officers and the language he used was furnished by them. Mrs. Dill testified there was no physical evidence upon defendant of any abusive treatment and that he recited the details of the burglary without any objection or apparent reluctance.

Error is assigned to the admission, over defendant's objections, of evidence of his demonstration and utterances in the show-up room. Iowa has no specific constitutional provision against self-incrimination but section 622.14, Code of Iowa, 1950, provides, in part, a witness is not compelled to answer incriminating questions. Defendant relies upon this statute and the due-process clause of the Constitution of Iowa. No decision of this court, directly in point, has been called to our attention. Beachem v. State, 144 Tex. Crim. 272, 162 S.W.2d 706, is cited by defendant. This and various decisions from other jurisdictions involving voice demonstrations are discussed in an annotation in 16 A. L. R.2d 1322. However, they involve demonstrations made under compulsion.

In the case at bar, the evidence whether there was such compulsion was in conflict. Defendant cites State v. Height, 117 Iowa 650, 91 N.W. 935, 59 L. R. A. 437, 94 Am. St. Rep. 323. A lengthy discussion of that decision and of the many authorities which refer to it is unnecessary. State v. Arthur, 129 Iowa 235, 237, 105 N.W. 422, 423, states the rule announced in the Height case does not apply to voluntary transactions. "His right not to furnish evidence against himself was one which could be .waived, and must be deemed to have been waived if not insisted upon." And in State v. Benson, 230 Iowa 1168, 300 N.W. 275, this court went further and held neither the statute nor the due-process clause in the Constitution made inadmissible evidence by another that one accused of driving while intoxicated declined to submit to a blood test.

Under the doctrine of these decisions the overruling of the objections was not error.

IV.  Defendant had testified that at no time was he able to give the police officers details of the offenses of which they accused him and that all details admitted by him were furnished him by them. On cross-examination he was asked if he recalled giving a demonstration at 1749 Lyon Street. The court overruled an objection to this, with the statement: "As I understand it, he has been asked about his ability to give details to the police officers, and that is what the inquiry is." Defendant answered he did not remember and upon being pressed refused to answer on the ground it might incriminate him.

On rebuttal for the State Mrs. Willey testified defendant came to that address with several officers, September 26, 1952, and was asked, "Which door did you go in?" He answered, "That door", indicating the side door. He was then asked, "Did you make this hole in the screen?" He answered, "I did." Next he was asked, "How did you know where to make the hole?" He answered, "Well, if you will stand at the side you can see." "* * * he showed them how you could see * * * and he would show them that the hook was there. * * * They all looked." This testimony was "objected to as incompetent, irrelevant and immaterial, an effort to get matters into this record not spelled out in the indictment." Error is assigned to the order overruling the objection.

It is the general rule that the State cannot prove against a defendant any crime not alleged in the indictment. Exceptions to the rule, frequently recognized, are that . such evidence is proper to show intent, motive, absence of mistake or accident, common scheme and identity of person. State v. Vance, 119 Iowa 685, 94 N.W. 204; State v. Snyder, 244 Iowa 1244, 59 N.W.2d 223, and citations. But there are broader and more general exceptions. State v. Rand, 238 Iowa 250, 264 to 272, 25 N.W.2d 800, 807 to 811, 170 A. L. R. 289, 300, states evidence of the commission of another crime ordinarily is irrelevant to the issues then being tried, that proof of an independent crime may be prejudicial to defendant and courts should be vigilant to exclude such evidence when it is irrelevant or there is a fair doubt of its relevance. "It is thus seen that the admissibility of such testimony is all a matter of relevance." The decision quotes with approval statements that it is not the quality of the action as good or bad, as unlawful or lawful, as criminal or otherwise, which. is to determine its relevancy and that the general rule is, no testimony which has a legitimate bearing upon any point in issue can be excluded regardless of whether it shows the commission of another crime. Many authorities are cited and quoted in support of these statements.

The headnote in boldface in 22 C. J. S., Criminal Law, section 683, page 1089, states: "The general rule excluding evidence that accused committed other offenses is subject to a number of exceptions, as where such evidence tends directly or fairly to prove his guilt of the crime charged, or to connect him with it, or to rebut the defensive theory or a special defense, or to * * *."

In State v. Harris, 100 Iowa 188, 69 N.W. 413, a trial for burglary where the defense was intoxication, evidence a witness had been robbed by defendant shortly before the burglary was held admissible to show defendant was not intoxicated at the time of the robbery.

In the case at bar it was defendant's theory he had no firsthand knowledge of the details of any offense and the statements made by him in the show-up room were actually the words of the police. "I had already been told the words back in the

goldfish room, but they told me back there to just recite exactly what I had been told in the goldfish room." With reference to another show-up he testified, "I confessed. Of course, the confession would be different. It would be a different confession, a different modus operandi as [Officer] Weichman explained to me." On cross-examination defendant would not admit having given a demonstration at 1749' Lyon Street. The testimony of Mrs. Willey not only went to defendant's credibility but also tended to controvert his theory his only knowledge of the details of any transaction was what he had been told by the police. Hence, the overruling of the objection did not constitute error.

█ V. Defendant contends the prosecuting attorney was guilty of misconduct prejudicial to defendant in attempting to bring other offenses to the attention of the jury. It must be conceded several instances appear in which the prosecuting attorney might have exercised more care in this respect. However, the distinguished trial court generally sustained defendant's objections to statements and questions which were improper or even doubtful and admonished the jury not to consider them. There is no merit in this assignment of error.

█ VI. Defendant complains of the admission in evidence, over his objections, of the knife, screwdriver and pencil flashlight. He was apprehended while prowling at night in the rear of a residence, and these articles were found on his person. The flashlight was similar to the one Mrs. Dill testified the burglar used. She testified also she was threatened with a knife. There was evidence defendant admitted using the flashlight in entering houses and the screwdriver to pry screens from windows of such houses. The trial court has considerable discretion in determining the admissibility of demonstrative evidence but great latitude is shown in admitting it and it is usually received if it affords a basis for a reasonable inference on a point in issue. We are satisfied the orders admitting these exhibits were not erroneous. State v. Leftwich, 216 Iowa 1226, 1228, 1229, 250 N.W. 489; State v. Alberts, 241 Iowa 1000, 1002, 43 N.W.2d 703, 705.

█ VII. The evidence was ample to require that the question of defendant's guilt be submitted to the jury. His counsel

conducted his defense with vigor and ability. The record indicates he received a fair trial. No abuse of discretion appears in the order of the trial court overruling defendant's motion for new trial. The life sentence imposed upon him is severe but we cannot say it is excessive in view of the circumstances of the aggravated offense of which he was found guilty. Hence, the judgment is affirmed.—Affirmed.

BLISS, C. J., and GARFIELD, WENNERSTRUM, MULRONEY, SMITH, and LARSON, JJ., concur.

HAYS and THOMPSON, JJ., concur specially.

HAYS and THOMPSON, JJ. (concurring specially)—We concur in the foregoing opinion, except in so far as it may be construed as approving unnecessary delay, which we think this record clearly shows, in filing charges against the defendant after his arrest and incarceration. We agree under the circumstances here this was not ground for reversal, but we cannot approve the unlawful acts of the arresting authorities in violation of section 758.1.