STATE OF IOWA, appellee, v. ELMER ARLO CASE, appellant.

No. 48713.

(Reported in 75 N.W.2d 233)

1020

MAY 9, 1956.

REHEARING DENIED JUNE 22, 1956.

Bradshaw & Crawford, of Fort Dodge, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, and George West, Assistant Attorneys General, and Leo J. Tapscott, of Des Moines, County Attorney, for appellee.

GARFIELD, J.—A jury found defendant, a married man age 27, guilty of what is commonly called statutory rape, in violation of section 698.1, Code, 1954. He has appealed from the judgment of conviction. The girl was Nancy Stepp, two days less than twelve years old.

On the night of June 22-23, 1954, defendant and his roommate Huss visited numerous taverns in Des Moines until nearly 1:30 a.m. Defendant then went to the apartment of a Mrs. Grundman with whom he was friendly but found she was not there. He lay down on a bed the State's testimony shows was occupied by the girl, Nancy, who was "baby sitting" with Mrs. Grundman's 6-year-old son. About an hour later Mrs. Grundman and Nancy's mother, a near neighbor, found defendant and Nancy in the bed together.

Nancy's evidence and a confession signed by defendant are to the effect he had intercourse with the girl before her mother and Mrs. Grundman found them in the bed. On the trial defendant testified he first knew Nancy was in bed with him when he was awakened by the two women and he denied any misconduct with her. About 3 a.m. Huss, defendant, Nancy, her mother

and Mrs. Grundman went to a hospital so a doctor could examine Nancy. An intern examined the girl and testified he found some irritation of her vaginal mucosa, a small tear in the hymenal ring which had occurred within 12 hours and evidence of recent bleeding. He also said the insertion of such an object as the male organ could have caused the condition he observed.

When the intern informed the adults who went to the hospital the condition in which he found Nancy, Huss knocked defendant down and kicked him and Mrs. Stepp tore his shirt off and scratched him. The police soon arrived and took defendant into custody.

Later the same morning, between 8:15 and 9, two police detectives talked to defendant who gave them a written confession admittedly signed by him. Defendant's first complaint on this appeal is that the trial court erred in admitting the confession in evidence because, it is said, it was not proven to be voluntary and the undisputed evidence shows it was obtained by promises and duress.

I. The test of admissibility of a written confession is whether it was made freely and voluntarily, without compulsion or inducement of any kind. It is the trial court's province to determine as a preliminary question whether a confession was made with that degree of freedom to justify its admission in evidence or, in case of doubt and of a conflict in the testimony, to submit the question to the jury under proper instructions. If it clearly appears the confession was induced by force, threats or promises the question is one of law for the court and the statement should be rejected. State v. Crisman, 244 Iowa 590, 592, 57 N.W.2d 207, 208, and citations; State v. Williams, 245 Iowa 494, 500, 62 N.W.2d 742, 745, and citations; Note 4 Drake Law Review 123, 125.

Here the question whether the confession was voluntary was submitted to the jury under instructions not complained of. This was proper. It does not clearly appear the statement was involuntary. It is true defendant testified he felt "lousy" and the detectives to whom the paper was given told him if he signed it the charge would be dropped, his family would not be brought into it and he would be released from jail. However, the detec-

tives said no promises or threats were made and defendant was not coerced in any way. It is not claimed the officers used physical force or violence.

This confession states it was given of defendant's free will, without threats or promises from the officers and with knowledge it might be used against defendant in court. A written confession which on its face purports to have been freely and voluntarily given is prima facie voluntary and the burden rests upon defendant to show it was involuntarily given. State v. Crisman, supra, 244 Iowa 590, 593, 57 N.W.2d 207, 209, and citations; State v. Webb, 239 Iowa 693, 699, 31 N.W.2d 337, 340, and citations; State v. Boston, 233 Iowa 1249, 1253, 11 N.W.2d 407, 409; State v. Bisanti, 233 Iowa 748, 751, 9 N.W.2d 279, 281, and citations; Note, supra, 4 Drake Law Review 123.

Regarding the voluntary character of the confession this case is strikingly similar to State v. Crisman, supra, which holds admission of the confession was not error. State v. Sims, 241 Iowa 641, 645–647, 40 N.W.2d 463, 465, 466, also holds the voluntary character of the confession was for the jury although defendant's testimony (not present here) he was frequently beaten and threatened by the officers raised a sharp dispute on that point.

There was a much stronger showing than we find here of the involuntary nature of the confession in State v. Thomas, 193 Iowa 1004, 188 N.W. 689, State v. Johnson, 241 Iowa 135, 39 N.W.2d 123, and State v. Archer, 244 Iowa 1045, 1049, 58 N.W.2d 44, 46, cited by defendant. The Johnson and Archer decisions are briefly analyzed in State v. Williams, supra, 245 Iowa 494, 500, 501, 62 N.W.2d 742, 745.

II. It is said the court erred in limiting defendant's evidence of his good character to that of general moral character and in rejecting testimony as to the traits of character involved in the crime charged.

Fourteen character witnesses testified for defendant, including his wife, his parents, an aunt and uncle. Incidentally, only one (his landlady) lived in Des Moines where defendant had been working for several months. The others were from Fort Dodge where defendant formerly, and also at the time of trial,

resided, and from Mason City where defendant's family lived at the time of the alleged crime. Most of the witnesses said defendant's reputation was good, for general moral character, for truth and veracity, and for having a quiet and peaceful disposition.

Basis for this claim of error appears to be the sustaining of the State's objections as improper in form to these questions asked the witness Joselyn, defendant's employer at the time of trial: (1) "State whether or not defendant in your opinion possesses a character that does not contain those traits that would make one likely to commit rape." (2) "State whether or not defendant possesses traits of character that show kindness and consideration and a positive attitude toward children." (3) "I will ask you with regard to his general reputation and character so far as it relates to gentleness and a kindly and considerate disposition, whether or not defendant possesses those qualities of character and reputation."

In addition to the rulings just referred to, one answer of the witness Joselyn was stricken but almost the identical answer of the same witness and most of the other defense witnesses was received without objection. Another question was first held objectionable but substantially the same question was later answered without objection by Mr. Joselyn and most of the other witnesses. Obviously defendant was not prejudiced by the two adverse rulings last mentioned. State v. Whitney, 247 Iowa 920, 76 N.W.2d 890, and citations; 3 Am. Jur., Appeal and Error, section 1031, pages 588, 589.

██ ██ The objections were rightly sustained to the three questions quoted above. It was proper for defendant to show his good character either by proof of his general reputation or of his real character. The distinction, roughly stated, between character and reputation is that character is what a person actually is while reputation is what one's neighbors say he is. State v. Poston, 199 Iowa 1073, 1074, 203 N.W. 257, 258; State v. Hartung, 239 Iowa 414, 426, 30 N.W.2d 491, 498; Article by Dean Mason Ladd, 24 Iowa Law Review 498, 506.

██ However, proof of good character may and must relate particularly to that trait of character involved in the crime

charged so guilt thereof is rendered improbable. State v. Ferguson, 222 Iowa 1148, 1161, 270 N.W. 874, and citations; Halligan v. Lone Tree Farmers Exchange, 230 Iowa 1277, 1285, 300 N.W. 551, 555; State v. Evenson, 237 Iowa 1214, 1217, 1218, 24 N.W.2d 762, 764; 22 C. J. S., Criminal Law, section 677e, page 1075; 20 Am. Jur., Evidence, section 327.

For example, upon a charge of homicide the traits of character usually involved are whether accused is peaceable and law-abiding. In larceny and robbery the traits involved are honesty and integrity. Upon a charge of perjury the traits are truth and veracity. In sex crimes, at least where (as here) force and violence are absent, the trait involved is morality. See article by Dean Ladd, supra, 24 Iowa Law Review 498, 528, and citations.

The second and third questions, quoted above, asked the witness Joselyn are not confined to the trait of character involved in the crime charged except possibly indirectly. They do not relate to morality but to gentleness, kindness and consideration toward children. The first quoted question refers to no particular trait of character the law recognizes as involved in the crime but calls for an opinion as to whether defendant possesses unmentioned traits that would make his guilt unlikely. While no decision squarely in point has come to our attention, these precedents lend support to our conclusion. State v. Evenson, supra, 237 Iowa 1214, 1217, 24 N.W.2d 762; 764; State v. Dexter, 115 Iowa 678, 682, 87 N.W. 417; Wentz v. State, 159 Md. 161, 150 A. 278; State v. Thompson, 58 Utah 291, 199 P. 161, 38 A. L. R. 697, 705. See also 22 C. J. S., Criminal Law, section 677e, pages 1075, 1076, and footnotes.

III. Defendant contends the court erred in not declaring a mistrial upon defendant's motion on the ground of misconduct of the prosecuting attorney in using in argument the name of one Huffman of the state bureau of investigation and in offering testimony of defendant's alleged refusal to submit a sample of his writing. Some explanation of the basis for this assignment is necessary.

Defendant's typewritten confession originally stated, "We was wearing, I believe, a shorty nightgown" etc. The word "We" was crossed out and "She" written in with pen, together with

defendant's initials. While defendant admitted signing the confession and writing his initials near the word "She" he denied writing that word. It would seem unimportant whether defendant wrote "She" or merely initialed it.

During an adjournment, in the absence of judge and jury, Mr. Duffield, prosecuting attorney, informed defendant, in the presence of his counsel and Deputy Sheriff Hildreth, that one Huffman of the state bureau of investigation had told him (Duffield) it was his opinion the words "She" and "Elmer Arlo Case" were written on the confession by the same person, but without an additional sample of defendant's writing Huffman could not point this out to the jury. Duffield then asked defendant (in his counsel's presence) if he was willing to provide such writing so Huffman could make the comparison. It is apparent what Duffield requested was whether defendant would write the word "She" for the prosecution. It is without dispute that consent was not given. At least no such writing was furnished.

When the trial resumed the State called Deputy Sheriff Hildreth as a witness in rebuttal and asked him: "Q. State whether or not you heard me advise defendant in the presence of his counsel I had made arrangements with Mr. Bud Huffman * * * to compare his handwriting with the word 'She' * * * if he would provide us with specimens of his handwriting?" Defendant's counsel made a long objection to the question, mainly on the untenable grounds it was unethical for Mr. Duffield to approach defendant even in his counsel's presence and the question called for hearsay. The objection was overruled and the witness answered, "Yes, I did."

This testimony followed: "Q. State whether or not defendant * * * would consent to providing such a signature? A. They did not consent." There was no objection to this question nor any motion to strike the answer. After all the evidence was closed defendant did move to strike all Hildreth's testimony. But there was no attempt to justify the failure to timely object to the question last quoted. Nor does the motion for new trial assert any error in connection with such question or the answer thereto.

During his argument to the jury Mr. Crawford, a defense

attorney, wrote on a blackboard before it the names of the two defense counsel, of Duffield and most, but not all, of the witnesses for defendant. (Most of them were character witnesses.) Mr. Duffield in his reply argument to the jury said, "You have before you a list of defendant's witnesses and there is one name I am going to write down here." He then wrote "Bud Huffman" on the blackboard. Mr. Crawford then said, "We object to it", without elaborating or assigning any reasons or grounds for the objection. After some bickering between opposing attorneys Mr. Crawford then directed Mr. Duffield: "Put his name down there if you want another witness."

After further wrangling Mr. Crawford accused Duffield of claiming Huffman was a defense witness, although the record shows such claim had not been made, and Mr. Bradshaw, the senior counsel, told the court Duffield had said Huffman was a witness in this case. Mr. Bradshaw did not charge Duffield had claimed Huffman was a witness for defendant. Mr. Duffield then said, "No, I don't believe that was my statement. I think my statement is the absence of the witness Huffman." Mr. Crawford then inquired, "Why didn't he (Duffield) call him (Huffman)?" Mr. Duffield then mentioned the testimony of Hildreth heretofore quoted. This brought another of the many interruptions from Mr. Crawford and Duffield announced that since he was not to be given an opportunity to make an argument he waived the right to do so and let the case be submitted.

Certainly what transpired during the adjournment could not have been prejudicial to defendant. The jury knew nothing of it except what Hildreth testified. Nor do we think there was misconduct of counsel sufficient to require a reversal in connection with that testimony. There would seem to be no impropriety in asking defendant in the presence of his counsel if he was willing to furnish the prosecution a specimen of his writing for purposes of comparing it with a writing he denied was his. And when defendant did not consent the State was entitled to show that fact. It was not entitled to show what Huffman would testify. However, Hildreth was not asked nor did he say what Huffman would testify other than that he would compare defendant's writing with the word "She" on the confession. What

such a comparison would reveal obviously could not be known until the specimen of defendant's writing was furnished.

■ An annotation in 171 A. L. R. 1144, 1192, states: "By the pronounced weight of authority, where the defendant * * * in his testimony, has denied that a writing was made by him, it is proper cross-examination * * * to require him to write, in the presence of the jury, the disputed words or figures, or some of them, and thereby create a specimen of his handwriting to be used in evidence for comparison with the disputed writing."

It would seem less damaging to an accused to show in evidence his refusal, when requested in the jury's absence, to furnish a sample of his writing than to require him to write, or refuse to write, the disputed word in the jury's presence.

We have held evidence admissible that one accused of operating a motor vehicle while intoxicated declined to submit to a blood test. State v. Benson, 230 Iowa 1168, 300 N.W. 275. The decision is cited with apparent approval in State v. Small, 233 Iowa 1280, 1282, 1283, 11 N.W.2d 377, 378, and State v. Williams, supra, 245 Iowa 494, 503, 62 N.W.2d 742, 747. Precedents similar to State v. Benson include State v. Gatton, 60 Ohio App. 192, 20 N.E.2d 265 (cited in our Benson case); State v. Nutt, 78 Ohio App. 336, 65 N.E.2d 675; Gardner v. Commonwealth (Hudgins, C. J.), 195 Va. 945, 81 S.E.2d 614, 617, 618; City of Barron v. Covey, 271 Wis. 10, 72 N.W.2d 387. See also annotation 175 A. L. R. 234, 240.

State v. Severson, N. D., 75 N.W.2d 316, 317, reaches a result contrary to State v. Benson, supra, without citing any precedent to support it, largely on the strength of statutes providing, " 'No defendant shall be required to submit to any chemical test without his consent' " and that a defendant's failure to testify shall not be referred to or considered.

We think there is a clear analogy between evidence of a defendant's refusal to submit to a blood test and evidence of his refusal to furnish a specimen of his writing for comparison with a disputed one. Certainly it would be much easier to write a single word than to submit to a blood test. State v. Benson, supra, and like decisions thus seem by analogy to support our conclusion here.

It would have been better if Mr. Duffield, aside from his reference to Hildreth's testimony, had not referred to Huffman in the short argument he made to the jury and his doing so is not to be commended. However, we are not persuaded the reference to Huffman was sufficiently prejudicial to call for a reversal. See State v. Peirce, 178 Iowa 417, 440, 159 N.W. 1050; State v. Boyd, 199 Iowa 1206, 1208, 200 N.W. 205; State v. Katz, 241 Iowa 115, 119, 40 N.W.2d 41, 44, 45. See also Connelly v. Nolte, 237 Iowa 114, 128, 21 N.W.2d 311, 318.

 Although the State's closing argument to the jury, if it may be called such, was reported, no record was made of those for the defense. We have frequently held that where the arguments for defendant are not preserved it will be presumed, where nothing to the contrary appears, the reply argument was a legitimate response to argument for defendant. Connelly v. Nolte, supra, 237 Iowa 114, 128, 21 N.W.2d 311, 318, and citations; State v. Johnson, 221 Iowa 8, 19, 20, 264 N.W. 596; State v. Cameron, 177 Iowa 379, 381, 158 N.W. 563. See also State v. Cleaver, 196 Iowa 1278, 1280, 1281, 196 N.W. 19.

There is nothing here that rebuts the presumption just mentioned. On the contrary it is strengthened. Mr. Duffield charged defendant's counsel with having argued to the jury matters not in the record, about how much it would cost to conduct an investigation and how they looked for a witness they could not find. Counsel did not deny the charge. This seems to have furnished at least some invitation or justification for what little was said in reply argument regarding Huffman.

 Misconduct of counsel does not require granting a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial. State v. Miskell, 247 Iowa 678, 690, 73 N.W.2d 36, 43, and citations, including State v. Jensen, 245 Iowa 1363, 1368, 66 N.W.2d 480, 482; State v. Haffa, 246 Iowa 1275, 1283–87, 71 N.W.2d 35, 40–42, and citations; Connelly v. Nolte, supra, 237 Iowa 114, 130, 21 N.W.2d 311, 318, and citations; State v. Caringello, 227 Iowa 305, 288 N.W. 80, and citations.

24 C. J. S., Criminal Law, section 1902a, pages 896 to 898, states: "A cause will not necessarily be reversed because of

alleged misconduct of counsel. On the contrary, appellate courts are strongly inclined against setting aside convictions because of misconduct of counsel. * * * Misconduct of counsel is generally regarded as harmless and not cause for reversal where it has not resulted in depriving accused of a fair trial, or in a miscarriage of justice * * *."

A fair trial does not necessarily mean an absolutely perfect one. State v. Haffa, supra, at page 1286 of 246 Iowa, page 42 of 71 N.W.2d.

We have repeatedly pointed out the trial court is in a much better position than we are to judge whether claimed misconduct of counsel is prejudicial. At least considerable discretion is allowed the trial court in passing on such a matter and we will not interfere with its determination unless it clearly appears there has been a manifest abuse of such discretion. See State v. Miskell, State v. Haffa, State v. Jensen, State v. Caringello, all supra, and citations therein. See also Turner v. Hansen, 247 Iowa 669, 75 N.W.2d 341, involving claimed misconduct of a juror.

The experienced trial court necessarily found defendant was accorded a fair trial. After giving such finding the weight it deserves the conclusion is not justified it clearly appears the finding was a manifest abuse of discretion.

While defendant's right to a fair trial is important, organized society—the State—was equally entitled to a fair trial. State v. Haffa, supra, 246 Iowa 1275, 1283, 71 N.W.2d 35, 40; State v. Schaeffer, 96 Ohio St. 215, 117 N.E. 220, 222, L. R. A. 1918B 945, Ann. Cas. 1918E 1137, 1138.

IV. It is said the evidence is not sufficient to sustain the verdict. Since this assigned error is not argued we might properly treat it as waived and disregard it. State v. Walters, 244 Iowa 1253, 1260, 58 N.W.2d 4, 7, and citations. However, we have preferred to carefully consider the assignment. We find the verdict has substantial support in the evidence and is not clearly against the weight thereof. Of course we do not decide disputed fact questions in a criminal case. That is the jury's function and its verdict here is binding upon us. See

State v. Poffenbarger, 247 Iowa 552, 554, 74 N.W.2d 585, 586, and citations.—Affirmed.

LARSON, C. J., and BLISS, OLIVER, WENNERSTRUM, SMITH, THOMPSON, and PETERSON, JJ., concur.